Lawrence et al. *versus* Lawrence.

1. A testator, by his will, proved in 1844, devised land to B. and C., "and their heirs as tenants in common, but if the said C. should die without leaving lawful issue, then and in that case" his share to go to B., "his heirs and assigns forever": *Held*, that C. took a fee tail.

2. Neither the word "assigns," nor the words "assigns forever," have any popular or technical meaning that could qualify a devise to a man and his "heirs."

3. A deed executed for the express purpose of barring an estate tail, although, for a nominal consideration, and containing a recital that it is in trust that the grantee shall immediately reconvey to the grantor, is good for its special purpose.

February 13, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas of *Delaware county:* Of January Term, 1883, No. 244.

Ejectment, by Lavinia J. Lawrence against Thomas D. Lawrence and Patrick Raidy, to recover the undivided one-half part of a certain tract of land in Haverford township, Delaware county.

On the trial, before CLAYTON, P. J., the following facts appeared: Both parties claimed title through one Clement Lawrence, whose will, dated October 16, 1844, and duly proved in November of the same year, contained the following item in regard to the land in question:

"I give and devise unto Thomas D. Lawrence and Mordecai Lawrence, sons of my brother Henry Lawrence, deceased, all that messuage and tract of land situate in the township of Haverford aforesaid, bounded by Darby creek and lands of Mary Bond and others. To have and to hold the said messuage and tract of land to them, the said Thomas D. Lawrence and Mordecai Lawrence, and their heirs, as tenants in common and not as joint tenants: But if the said Mordecai Lawrence should die without leaving lawful issue, then and in that case, I give and devise the moiety or undivided half part of said messuage and tract of land, with the

appurtenances thereunto belonging devised to him, to the said Thomas D. Lawrence, his heirs and assigns forever."

The will further contained a devise of certain mill property to William P. Lawrence, "and his heirs," but if William should die without leaving lawful issue the same to go to Thomas, "his heirs and assigns forever;" also a devise of a tract of land in trust for Clement Lawrence (another nephew), "his heirs and assigns forever"; but if ħe should not live to the age of twenty-one years, the said tract of land to go to the oldest son of Thomas then living, subject to the same conditions. Then followed two devises of real estate, one to William, "his heirs and assigns forever," and finally eleven bequests of personal property, in each of which the words "heirs and assigns" were added to the name of the legatee.

The testator died unmarried and without issue, leaving as his next of kin a brother, Joshua Lawrence, and nephews and nieces, children of deceased brothers.

After the testator's death the said Thomas D. Lawrence and Mordecai Lawrence held the property in question as tenants in common, during the lifetime of the said Mordecai, sharing the rents and profits, the property being occupied by tenants under them.

On May 28, 1878, Mordecai Lawrence and his wife executed a deed, which was duly acknowledged and recorded, to Lavinia J. Lawrence, for his undivided half of the premises in dispute, the consideration being one dollar. This deed recited a trust in Lavinia to reconvey to Mordecai, and that it was for the purpose of barring all estates tail in the said Mordecai. Lavinia J. Lawrence executed a deed the same day to the said Mordecai Lawrence, for the same premises, which was also duly recorded, and recited the above conveyance to her.

In February, 1880, Mordecai Lawrence died, leaving a widow but no children, never having had a child born unto him. After his death Thomas D. Lawrence retained possession of, and continued to lease, the said premises.

At the time of the testator's death Mordecai had been married about twenty years; and William P. Lawrence, who was older than his brothers Thomas or Mordecai, had been married about fifteen years and was also childless.

Lavinia J. Lawrence was adopted by Mordecai Lawrence, by Act of Assembly approved February 9, 1871, and brought this suit, claiming as devisee under his will.

The defendants submitted the following points:

1. From the context of the will of Clement Lawrence it appears that he intended a distinction between the words "heirs" alone and the words "heirs and assigns;" that when he used the latter words he intended an absolute estate, and

[Lawrence v. Lawrence.]

that as both William P. Lawrence and Mordecai Lawrence, with respect to whom the testator used the word "heirs" alone, had been married many years, but had never had any children, the testator intended by the word "heirs," in the devise to them, to say children, and consequently the devise to Mordecai was not an estate tail.

Answer. This point is negatived.

2. By the will of Clement Lawrence the estate devised to Mordecai Lawrence, in the premises in question, terminated upon his decease without issue.

Answer. This point is negatived.

3. The deed executed by Mordecai Lawrence, dated May 28, 1878, was ineffectual to bar an estate tail, if any existed in the grantor.

Answer. This point is negatived.

4. The verdict must be for the defendant.

Answer. The point is negatived.

The court directed the jury to find a verdict for the plaintiff. Verdict accordingly, and judgment thereon, whereupon the defendants took this writ of error, assigning for error the answers to their points, and the instruction to find a verdict for the plaintiff.

*A. Lewis Smith* (with whom was *George E. Darlington*), for the plaintiffs in error.—The word "issue" in a will is not necessarily a word of limitation. It will be construed as a word of purchase, or of limitation, as will best carry out the intention of the testator as gathered from the entire instrument. Taylor *v.* Taylor, 13 P. F. S., 481; Eby *v.* Eby, 5 Barr., 461; Leightner *v.* Leightner, 6 Norris, 144; Hill *v.* Hill, 24 P. F. S., 173; Nicholson *v.* Bettle, 7 Id., 384; Hoge *v.* Hoge, 1 S. & R., 144. It is evident from the will that the testator desired to keep the real estate in question in his family, and as William and Mordecai had been married many years and were childless, he wished Thomas, who had a family, to take their shares if they were still without children when they died. The distinction which the testator, in his ignorance of technical terms, makes between "heirs" and "heirs and assigns," runs through the entire will, and is the index to his intention. To William, who had no children, he devised the mill property, to hold *to him and his heirs*, but if William should die without *leaving* lawful issue *then, and in that case*, the mills (part of the family property) were given to Thomas, *his heirs and assigns*. The omission of the word "assigns" to the testator's mind added the quality which he wanted to annex to an estate otherwise absolute, and so when he comes to give another part of this same property to

9 OUTERBRIDGE.—22.

Thomas and Mordecai, he devised it in like manner to them and *their heirs*, but if Mordecai should die without *leaving* lawful issue, *then and in that case*, his undivided moiety was devised, as in the other case, to Thomas, his *heirs and assigns*.

So in the numerous bequests of personal property, the testator expressed an absolute estate by the use of the words "heirs and assigns." The word "heirs" in the devise to Mordecai and Thomas, is shown by the context not to mean heirs of the body, otherwise Thomas would take an estate tail as well as Mordecai. There is, therefore, no need to call in the aid of the word "issue" to define the word "heirs," and we must consequently attribute to the testator the intention of describing a definite failure of issue, in order that the whole clause shall stand. Such an interpretation is perfectly supported by the peculiar phraseology of the devise over hereinbefore noted, namely, "If the said Mordecai Lawrence should die without leaving lawful issue, then and in that case, etc.," all of which must otherwise be thrown out of the will.

The deeds by which Mordecai Lawrence sought to bar the supposed estate tail, were not in accordance with the statute which requires that a deed, to be effectual for barring an estate tail, shall be made to a bonâ fide purchaser for a valuable consideration. In the present case the deed from Mordecai Lawrence and wife to Lavinia J. Lawrence contained the following clause after the habendum: "In trust, by good and sufficient deed and conveyance, immediately after the delivery of these presents, to grant and convey the same premises to the said Mordecai Lawrence, his heirs and assigns, to and for his and their only proper use and behoof forever." Both deeds were dated and acknowledged May 28, 1878; the deed to bar the entail was entered in open court June 3, 1878, and both were recorded July 1, 1878. If this proceeding can be maintained the second deed was unnecessary. In Pennsylvania the law would execute the trust to reconvey, and therefore the title conveyed by the first deed was immediately re-transferred by operation of law to the grantor. If these conveyances be held effective the entire substance of the Act will have been done away with, and the tenant in tail might as well perform the whole operation by a deed poll, declaring his intention without conveying to any one.

*John M. Broomall*, for defendant in error.—It is well settled that if a devise be made to one in fee, and if he dies "without issue," or "on failure of issue," or for "want of issue," or "without leaving issue," then over to another in fee, the estate of the first taker is in tail. Wharton's Dig. Wills, 5 pl., 356. The word "assigns," where it is used in this will

and in other similar cases, has no meaning or function whatever. It is neither a word of limitation nor purchase. Wherever it occurs following the word "heirs," whether in deeds or wills, it may be stricken out with impunity. By the first clause of the devise both takers are given a fee of some kind. Standing alone this would be a fee simple, and as to Thomas it does stand alone. As to Mordecai it is affected by the after clause, "If Mordecai should die without leaving lawful issue, then and in that case the lands should go to Thomas, his heirs and assigns." Whatever the word "issue" means it was intended to modify the meaning of the word "heirs" in the previous clause; to show that that word did not mean heirs generally. The words "heirs" and "issue" in that connection doubtless mean the same thing, and as Mordecai could not die without heirs, while any descendant of Thomas lived, it is manifest that issue could not mean heirs generally. The devise is therefore to be read to Mordecai and the heirs of his body, and if he should die without heirs of his body then over. This would make an estate tail unequivocally.

The form of the deeds used to bar the estate tail is the one given by Dunlap, and has stood the test for nearly fifty years. Doubtless a deed from A. to B. in trust to reconvey to A., passes no estate to B. But if something is intended to be done before the land gets back to A., the case is different. A deed from A. to B. with the expressed intent to bar an estate tail and to reconvey, vests enough estate in B. for that purpose, and when A. gets the land again the estate is barred.

Mr. Justice TRUNKEY delivered the opinion of the court, March 3, 1884.

In ordinary language, when a testator gives an estate to a person and his heirs, with a limitation over in case of his dying without issue, he means that the devisee shall retain the estate if he leaves issue surviving him, and not otherwise. But at common law the established interpretation of words of limitation on failure of issue, whether the terms be "if he die without issue," "if he die without having issue," "if he have no issue," or "if he die before he has any issue," in absence of all words making a different intent apparent, is, that they import a general indefinite failure of issue, and not a failure at the first taker's death: 2 Jarman on Wills, *497. That this is the rule in Pennsylvania has not been doubted since the decision in Eichelberger v. Barnitz, 9 Watts, 447. There the testator directed that if his son Henry "should die without leaving any lawful issue, that then his full share" should go

to the testator's other children; and it was held that Henry took a fee tail.

Not controverting the rule, the plaintiffs in error contend that in the light of the fact that at the date of the will of Clement Lawrence, Thomas D. Lawrence had children, and both William P. and Mordecai Lawrence had been married a number of years and were childless, the testator intended a failure of issue at a particular period, viz., the death of Mordecai Lawrence. The testator devised: 1. Real estate to William and his heirs; but if William should die without leaving lawful issue he devised the same to Thomas, his heirs and assigns forever; 2. A tract of land to Thomas and Mordecai, and their heirs, as tenants in common; but if Mordecai should die without leaving lawful issue, the moiety devised to him to go to Thomas, his heirs and assigns forever; 3. A tract of land to Clement Lawrence, his heirs and assigns forever; but if he should not live to the age of twenty-one years, the said tract to go to the oldest son then living of Thomas, subject to the same conditions. Then follows two devises of real estate; one to William, his heirs and assigns forever; one to Mordecai, his heirs and assigns forever; and eleven bequests of personal estate, and in each the words "heirs and assigns" are added to the name of the legatee. He intended in the bequests of personal property to give an absolute estate, and that intent would have been as clearly expressed had he omitted the words "heirs and assigns." Had he added the word "forever," it would in no wise have affected the character of the legacy. What he meant by the use of the words "heirs and assigns" in the bequests of personalty is a matter of conjecture. In the devises of real estate the words "heirs and assigns forever" are used in five instances, and the word "heirs" in three. That in each case, unless limited or conditioned by other words, an estate in fee simple was devised, is admitted. Conceding that the word "heirs" was appropriate, if not necessary, for devising a fee, how could the fee be qualified by the word "assigns" or words "assigns forever?" Neither of these words has a popular or technical meaning that could qualify a devise to a man and his heirs. The intendment in every devise is very plain. To Thomas the land is given in fee; to William and Mordecai lands are given in fee, with limitation over; to Clement the land is given in fee, subject to the contingency that if he should die before the age of majority, then over to another person. What the word "assigns" means in any of these devises is impossible to conceive. If any meaning was attached to it by the testator it was probably the same as where it is used in the bequests of personalty. He could not have intended less than a fee in the devise of one-

[Lawrence v. Lawrence.]

half the tract to Thomas and his heirs—he intended no more when, if Mordecai should die without issue, he devised the other half to Thomas, his heirs and assigns forever. In a deed with covenants by the grantor, the word "assigns" may have significance, but in a devise, as in this will, none. It is urged that the phrase "then and in that case" appearing in each of the first three devises, shows that the testator used the word "then" in the devises to William and Mordecai, respectively, as referring to the time of their death, as in the case of Clement to the time of his full age. But in each case if the phrase were stricken out, the meaning would remain precisely the same, and, therefore, there is no particular sense in which it is used in one place that serves to define it in another. None of the devises are modified by the superabundance of words. If a word be used in a definite and ascertainable sense in one place in a will, that will aid in arriving at its meaning in another. Whether the will is artistic or not, if its meaning be plain it shall not be set aside for mere redundancy of words. The indiscriminate use of words and phrases in this will fails to show that the word "heirs" in any devise was used in other than its technical sense; nor does it show that the word issue was used in the sense of children, or as denoting a class of persons, nor is there anything to overcome the legal interpretation of the words of limitation on failure of issue.

This case is unlike Ingersoll's Appeal, 86 Pa. St., 240, for there, as remarked by Justice SHARSWOOD, the words of limitation were found three times in the same paragraph; in the first two they were evidently used in the sense of a definite failure of issue, and the inference was irresistible that in the third the words were used in the same sense as before. Had the third not been defined by the two preceding, "the law would have construed it to be an indefinite failure of issue." In the present case the limitation is in the same words in the devises to William and Mordecai, and are found nowhere else in the will.

In Daley v. Koons, 90 Pa. St., 246, the devise was to M. for life, and after her death to her children in fee, and in the event of M. dying without issue, then to her brothers and sisters. The devise to M.'s children, preceding the words importing a failure of issue, was within the rule "that words importing a failure of issue, following a devise to children in fee simple or fee tail, refer to the objects of that prior devise, and not to issue at large." The devise was to M. for life, and then to her children in fee. This case and others cited by the counsel for plaintiff in error in the ingenious and able argument, illustrate various exceptions to the legal interpretation of the words "dying without issue," where the meaning

[Peirce *v.* Black.]

is shown by other words in the will.  But we are not convinced that they apply to the case in hand, because of the dissimilarity of the facts.

The deed by Mordecai Lawrence to Lavinia J. Lawrence was for the expressed purpose of barring the estate tail, and although it was in trust .that the grantee should immediately convey to the grantor, it was good for its special purpose. Such conveyances and re-conveyances, for nominal consideration, for the purpose of barring estates tail, have been upheld, indeed, their validity has been unquestioned.  The conveyance was upon the expectancy, founded on oral agreement, of reconveyance, and putting the trust in writing ought not to vitiate the transaction.  The object of the statute is accomplished by the deed, acknowledged, entered upon the records of the court, and recorded, which acts meet the requisites for barring the estate tail; for that purpose the legal title passes, whether the trust is oral or written.  When written, the grantee is beyond temptation to claim the land.

Judgment affirmed.