# Decker *v.* New York Central & Hudson River Railroad Company, Appellant.

*Negligence—Railroads—Burning of barn—Contributory negligence.*

1. In an action against a railroad company to recover damages for the burning of a barn alleged to have been caused by the careless dumping of coals, fire and ashes from one of the defendant's engines, the

plaintiff will be adjudged guilty of contributory negligence as a matter of law, where it appears from his own evidence that he saw the defendant's employees draw the fire near the barn, that the ground was dry, that there was dry litter and hay between the dump and the barn, that the wind was blowing from the fire towards the barn, that plaintiff saw the trainmen move away with the engine without extinguishing the fire and that he, himself, departed leaving the fire burning without any attempt to put it out or get any other person to do so.

2. In such a case where the defendant produces evidence that a number of engines of another railroad company had passed near the barn during the two hours' interval between the dumping of the ashes and the discovery of the fire at the barn, and there is no direct proof that the fire at the dump actually kindled the fire at the barn, it is reversible error for the court to refuse to charge that "if the jury find that there are other causes for which the defendant was not responsible which might just as well have produced the result complained of, and that there is an absence of direct proof as to the cause of the injury, there can be no recovery for the plaintiff."

*Negligence—Railroads—Burning of barn—Lease—Covenant—"Assigns."*

3. Where a railroad company leases land upon its right of way for the purpose of permitting the lessee to erect a building thereon for the purpose of storing hay, and the written lease provides that the lessee shall assume all risk of loss by fire resulting from the operation of the railroad "operated by said lessor, its successors or assigns," another railroad company which operated its trains on the railroad in question by virtue of a contract or lease from the company owning the railroad, is an "assign" within the meaning of the lease of the building, and is entitled to the protection of the covenant therein contained.

Argued Feb. 24, 1914.   Appeal, No. 3, Feb. T., 1914, by defendant, from judgment of C. P. Tioga Co., May Term, 1911, No. 222, on verdict for plaintiff in case of Ambrose R. Decker v. New York Central & Hudson River Railroad Company.   Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reserved.

Trespass to recover damages for personal injuries. Before CAMERON, P. J.

The facts are stated in the opinion of the Superior Court.

Defendant's points were as follows:

2. If the jury find from all the evidence in the case that there is as reasonable a probability that the property for which this action is brought was destroyed from a cause other than the one complained of, there can be no recovery in this action. *Answer:* That is the law as a general proposition. But, it is our duty to say to you that there is no direct evidence here on the part of the defendant that this fire was caused in any way. The plaintiff's witness, Mr. DeWitt, testifies that he could trace the fire from this pile of ashes to the barn; bearing that evidence in mind, if you still think from the evidence that there is a reasonable probability that these barns were destroyed by another cause, it would be your duty to return a verdict for the defendant. [1]

3. The uncontradicted evidence being that the plaintiff was present and saw the cinder pile complained of when on fire, saw the danger and made no effort to protect his property, he was therefore guilty of contributory negligence and your verdict must be for the defendant. *Answer:* Refused. [2]

4. The plaintiff cannot recover in this case because his own evidence shows himself guilty of contributory negligence, in going away and making no effort to protect his property, after he saw the cinders dumped upon the railroad track near his property and believed, as he testified, that there was danger from the cinders so deposited upon the track. *Answer:* Refused. [3]

5. That the lease under which the plaintiff was in possession of the land upon which his barn was located by its provisions bars the right of the plaintiff to recover in this case. *Answer:* Refused. [4]

If the jury find from the evidence that there are other causes for which the defendant was not responsible, which might just as well have produced the result complained of, and that there is an absence of direct proof as to the cause of the injury, there can be no re-

covery for the plaintiff and the verdict must be for the defendant. *Answer:* Refused. In view of the evidence of Mr. DeWitt already alluded to, we cannot say to you there is no direct proof of the cause of the fire. [5]

9. Under all the evidence in this case, the verdict must be for the defendant. *Answer:* Refused. [6]

Verdict and judgment for plaintiff for $1,293.60. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*S. F. Channell,* with him *H. B. Leach, Walter Sherwood* and *Edward H. Owlett,* for appellant.—Where a person knows of the existence of a fire upon the property of another which is likely to spread to and destroy his own property, he is bound to use reasonable care and diligence to prevent its so spreading: Haverly v. State Line, etc., R. R. Co., 135 Pa. 50.

The stipulation against liability for negligence of a railroad company setting fire to buildings erected on its right of way under a lease may be included in the lease without violating any law of public policy: Pennsylvania Co. v. Ellett, 24 North E. Repr. 559.

*Andrew B. Dunsmore,* with him *Paul J. Edwards* and *Charles M. Elliott,* for appellee.—Plaintiff was not guilty of contributory negligence: Hunter v. Pennsylvania R. R. Co., 45 Pa. Superior Ct. 476; Stewart v. Central R. R. Co. of New Jersey, 235 Pa. 311; Brown v. Lynn, 31 Pa. 510; Pennsylvania R. R. Co. v. Ogier, 35 Pa. 60; Wrought Iron Range Co. v. Graham, 80 Fed. Repr. 474; McCully v. Clark, 40 Pa. 399.

The lease under which the plaintiff was in possession of the land upon which his barn was located, by its provisions does not bar the right of the plaintiff to recover in this case: Edwards v. Campbell, 12 Tex. Civ. App. 236.

OPINION BY PORTER, J., July 15, 1914:

The plaintiff brought this action to recover damages for the destruction by fire of a building with its contents, alleging that said fire was caused by the negligence of the employees of the defendant company. He recovered a verdict and judgment in the court below and the defendant appeals.

The plaintiff averred in his statement that the building in question was located upon lands of the Erie Railroad Company, in the borough of Mansfield; that the defendant "has right of trackage for certain trains, cars and locomotives belonging to and operated by said defendant, over the railroad owned and controlled by the Erie Railroad Company," and was then and there engaged in operating and running upon and over the tracks and lines of said Erie Railroad Company, locomotive engines, cars and trains; and so negligently operated its said locomotive engines that coals and fire escaped from one of its locomotive engines as it passed along and occupied the tracks and right of way of said railroad company immediately adjacent and contiguous to plaintiff's building, that sparks, live coals and fire escaping from said locomotive engine communicated and set fire to the said building and wholly destroyed the same with its contents. The statement alleged the specific act of negligence which caused the fire as follows: "The burning of said warehouse and personal property being due to negligence and carelessness of the defendant and the total disregard of its duty in operating said locomotives and engines and in failing properly to arrest the coals and fire escaping from its engines, by proper appliances and in a proper manner, and by negligently and carelessly dumping coals, fire and ashes from one of its engines so near to and under such circumstances as to endanger said warehouse of the plaintiff so destroyed and burned."

The building of the plaintiff occupied a part of the right of way of the Erie Railroad Company, and stood

quite close to the tracks. Immediately south of plaintiff's building and equally close to the tracks stood a building occupied by W. D. Rose, used for storing hay. This is not a case of an alleged defect in a spark arrester, the negligence charged was carelessly dumping coals, fire and ashes from the engine upon the main track of the railroad. The negligence charged was the dumping the fire, not the failure to extinguish it after it had been dumped. The plaintiff who testified in his own behalf thus describes the occurrence: "Q. Did you see the N. Y. C. train? A. Yes. Q. You say you were there when you saw them draw the fire? A. Yes, sir; I saw there was something the trouble with their grates and they run up there on that main track, and some of their grates fell out and they drew their fire. Q. What do you mean by drawing their fire? A. Well, they dropped their whole bed of fire that they used for running their engine there, within eighteen feet of these barns, across in the main track. Q. How much fire did they dump out there? A. Five or six bushels of fire. Q. State whether or not it was live fire? A. It was live fire. Q. Who was with you at that time? A. Mr. Kinney was down there; he is the agent for the Erie Railroad. Q. What was the condition of the ground as to being dry or damp between this fire that was burning and your barn and Mr. Rose's barn? A. It was a very dry time; the ground must have been very dry—it couldn't have been otherwise. Q. What was the condition of the ground as regards refuse and litter, at the point where this fire was and the intervening space between the barn of W. D. Rose and the fire? A. It was covered with litter and hay. Q. Was that litter dry? A. It must have certainly been. Q. Which way was the wind blowing at the time this engine dumped this fire within eighteen feet of this barn? A. The wind was blowing strong from the northwest. It was blowing to the barn from the fire. . . . Q. What did the engine and train of the N. Y. C. Company do

after dumping this fire? A. They backed down the main track again and went over to the switch on the other side. Q. What did you do? A. Mr. Kinney and I walked back up to the depot and I went over to my office. Q. State whether or not there were other employees or railroad men there? A. None but these N. Y. C. people that belonged to that train, is all I remember. Q. State whether or not you saw any attempt on the part of the railroad company or its employees to extinguish this fire? A. No, sir, I did not see any. . . . Q. Mr. Decker, you say you saw this fire dumped there? A. Yes, sir. Q. And that you knew the conditions as to its being dry and hot and the proximity of your barn and the litter along there on the ground, and that the wind was blowing from this fire towards your barn. A. Yes, sir. Q. And that there was a strong wind? A. Yes, sir. Q. You say Mr. Kinney, who was station agent at that point, was with you at that time? A. Yes."

The plaintiff testified, upon cross-examination, that the fire was dumped from the engine about twenty feet from the south end of his barn, very close to the barn, about opposite the passageway between the two barns. That he saw there was danger of the fire being communicated to his building his cross-examination clearly disclosed. "Q. Mr. Decker, at the time you were there, at the time the fire was dumped, did you consider there was any danger either to your barn or Mr. Rose's barn? A. I did. Q. What did you think the danger was from this pile of coal and ashes? A. I thought it might blow into the barn if the railroad company didn't take care of it."

The only explanation of his conduct, in going away and leaving that fire burning, with the ground between the fire and the buildings littered with hay, and a strong wind blowing in the direction of the barns, was in redirect examination: "Q. Mr. Decker, why did you go away and leave this fire there, considering it dangerous?

A. Why did I?   Q. Yes, sir.   A. I supposed the railroad men would always take care of these fires.   Q. State whether or not at the time where the fire was when you were there, you had any means at hand of extinguishing the fire had you undertaken it.   A. No; I had no means at hand."

Yet upon re-cross-examination he made this admission: "Q. Was there not a barrel of water right there handy? A. Clear at the further end of the depot?   They keep water there most of the time—whether there was any water there then I do not know."

This occurred about ten o'clock in the morning.   The plaintiff left his building thus exposed to the peril of fire, taking no means to protect it, and paid no further attention to it until about two hours later when he heard an alarm of fire, as he was sitting down to his dinner at his residence, and going to the scene found that the barns were burning.   The barn of Mr. Rose was first observed to be on fire some time between twelve and one o'clock.   The defendant submitted a point praying for an instruction that the plaintiff must, upon his own showing be held guilty of contributory negligence, and that he was not entitled to recover.   We are of opinion that this point should have been affirmed. The explanation of the plaintiff that he relied upon the railroad men to put out the fire is to be viewed in the light of the circumstances to which he testified.   The engine of the defendant company having been thus at least partially disabled by the occurrence, that engine and train were backed away from the fire, the crew going with the train, and the train was subsequently run upon a siding on the other side of the track.   The only railroad man left upon the scene, according to the testimony of this plaintiff, was Mr. Kinney, who, the plaintiff testified, "is the agent for the Erie Railroad;" and there is no evidence in this case tending to establish that Mr. Kinney was an employee of the defendant company.   The plaintiff and Mr. Kinney, in company,

after the employees of the defendant company had gone up the track, with their train, left this fire burning upon the track with the ground between the fire and the barns littered with hay, upon a day when everything was hot and dry and there was a strong wind blowing from the fire towards the barns, and paid no attention to the matter for over two hours. This was certainly not the act of a man exercising reasonable prudence to protect his property from a danger of which he was fully aware, and all the material facts being admitted by him, he should be held guilty of contributory negligence, as matter of law: Haverly v. State Line, etc., Railroad Company, 135 Pa. 50; Schlemmer v. Buffalo, Rochester & Pittsburg Railroad Co., 222 Pa. 470; Hunter v. Pennsylvania Railroad Co., 45 Pa. Super. Ct. 476; Beech on Contributory Negligence, secs. 35, 39, 57, 58 and 447. The third specification of error is sustained.

The defendant company produced evidence, which if believed, established that the amount of fire dumped upon the track was much less than that asserted by the plaintiff, that the fire was all subsequently carefully extinguished; that a number of engines of the Erie Railroad Company drawing trains had passed along the track and that two engines of the Erie Railroad Company had been on the side track immediately adjoining the barns, during the interval between the dumping of the fire from the New York Central train and the time when the barn of Mr. Rose was first discovered to be on fire, one of said engines having been on the side track only a short time before the fire was discovered on the building. There was testimony which would certainly have warranted a finding that the fire when first noticed was upon the roof of Mr. Rose's barn and had not been communicated to the barn through the hay and litter upon the ground. This testimony certainly raised a question whether the fire had been communicated to the barns from the fire dropped from the New York Central train, through the hay and litter upon the ground, or the

buildings had been fired by sparks from the Erie Railroad Company's locomotives. The burden was upon the plaintiff, in order to entitle him to a verdict against this defendant, to satisfy the jury not merely that the defendant had been negligent and that the building had burned, but that the negligence had caused the fire. The defendant requested the court to charge the jury that: "If the jury find from the evidence that there are other causes for which the defendant was not responsible, which might just as well have produced the result complained of, and that there is an absence of direct proof as to the cause of the injury, there can be no recovery for the plaintiff and the verdict must be for the defendant." This point the court refused. This point did not attempt to withdraw from the jury any fact, or instruct them as to how they should find upon any question of fact. The court was not requested to charge the jury that there was an absence of direct evidence as to the cause of the injury. The request was that if the jury found there was an absence of "direct proof" as to the cause of the injury, and that there were other causes for which the defendant was not responsible, which might just as well have produced the result complained of, the verdict must be for the defendant. The learned judge of the court below refused the point because he was of opinion that the testimony of Mr. DeWitt constituted direct evidence that the fire upon the track had been communicated to the building. We have carefully considered the testimony of Mr. DeWitt and are of opinion that there is grave doubt as to whether that testimony can be said to be even direct evidence that the fire upon the track was responsible for the burning of the buildings. Mr. DeWitt did not arrive upon the scene of the fire until after the conflagration was well under way. He testified, it is true, that there were marks of fire in the litter between the building and the fire upon the track, but the building was then burning. He did not see the fire running through

the hay until it reached the building and then seizing upon the building. The building was on fire long before he arrived upon the scene. Mr. DeWitt's testimony may have been sufficient to warrant the jury in drawing the inference that the fire had been communicated to the building from the fire upon the track, through the hay and litter upon the ground, but Mr. DeWitt did not undertake to testify that he saw that very thing occur. The testimony of Mr. DeWitt was to be considered by the jury, in connection with all the other testimony in passing upon the facts, which this point distinctly submitted to the jury. If after considering all the testimony the jury were unable to say whether the burning of the buildings was due to the negligence of the defendant company or to the negligence of the Erie Railroad Company, or were not satisfied that responsibility for the damage was by the weight of the evidence fixed on either company, then this defendant was entitled to a verdict. The conjecture of a cause is not sufficient, especially when other causes for which the defendant would not be responsible might just as well have produced the result: Stringert v. Ross Township, 179 Pa. 614. The fifth specification of error is sustained.

The building of the plaintiff which was destroyed by fire had been erected upon the right of way of the Erie Railroad Company under a written agreement or lease between him and that company. The agreement provided that the building should be used only for storing hay and cement and the business properly pertaining thereto. Now when a building is to be used for storing hay there is certainly a possibility, if not a reasonable probability, that the ground about it may become littered with hay and other inflammable material, which do not conduce to the safety of property immediately adjoining the tracks of a railroad. This was no doubt the reason why the parties to this agreement included the following covenant: "Said lessee for himself, his heirs, executors, administrators, successors and assigns,

hereby assumes all risk of loss, damage or injury, by
fire or otherwise, to person or property on or about said
leased premises . . . . arising out of the condition or
location of said leased premises, or the operation, main-
tenance or existence of the railroad operated by said
lessor, its successors or assigns, or any of its appurte-
nances, and agrees to indemnify and save harmless said
lessor, its successors and assigns, from all claims for
any and all such loss, damage or injury, whether caused
by the negligence of the said lessor, its successors or
assigns, or by the negligence of its or their servants,
agents or employees, or otherwise." The plaintiff erected
his building upon the right of way of the Erie Railroad
Company subject to the covenants of this lease. The
plaintiff covenanted not only for himself but his heirs
and assigns, and the Erie Railroad Company exacted a
covenant which protected not only the company but
its successors or assigns from liability for loss by fire
to the property of the plaintiff, "whether caused by the
negligence of the said lessor, its successors or assigns, or
by the negligence of its or their servants, agents or
employees, or otherwise."

This contract did not relieve the railroad company
from its duty as a common carrier or any other duty
which it owed to the public. The plaintiff was acquir-
ing the right to erect a building and use it for a purpose,
which because of the location and circumstances, ex-
posed it to destruction by fire. There is no rule of
public policy which forbade the railroad company to
enter into a covenant that it, its successors and assigns,
should be exempted from liability for such loss by fire,
even though that loss occurred through the negligence
of some of its employees: Pittsburg, Cincinnati, Chicago
& St. Louis Railroad Co. v. Mahoney, 40 L. R. A. 101,
and also 29 L. R. A. 753. The plaintiff covenanted
for himself, his heirs and assigns and with the Erie
Railroad Company, its successors and assigns. These
were positive covenants running with their estates, and

in such a case the word "assigns" has a significance: Lawrence v. Lawrence, 105 Pa. 335. The word implies the power to alienate, and comprehends not merely a single person, but a line or succession of persons: Mc-Cree v. Means, 34 Ala. 349; Chrystie v. Phyfe, 19 N. Y. 344. "The word 'assigns' is a term of well-known signification, comprehending all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law:" Bailey v. De-Crespigny, L. R. 4 Court of Q. B. 186; Brown v. Crookston Agricultural Association, 34 Minn. 545. "Assignment" is a transfer or making over to another of the whole of any property, real or personal, in possession or action, or of any estate or right therein: Bouvier's Law Dictionary. The plaintiff had averred in his statement that the defendant "has right of trackage for certain trains, cars and locomotives belonging to and operated by said defendant over another railroad, owned, operated and controlled by the Erie Railroad Company;" and that the alleged negligence of defendant's employees occurred, "while using and occupying said Erie Railroad tracks." Counsel for the parties, in order to save the production of testimony, had in this case entered into a formal written stipulation, "that at the time of the happening of the grievance complained of in this case, the defendant company was operating trains, cars and locomotives over and upon the line of the Erie Railroad, between Blossburg and Lawrenceville, by virtue of a contract or lease with the said Erie Railroad Company." This clearly established that the defendant company was lawfully operating its trains upon that railroad under a contract with the Erie Railroad Company, and brought the defendant within the covenant of the lease that the "assigns" of the lessor should not be liable to the plaintiff for loss of the property by fire, when caused by the negligence of its servants, agents or employees. There was, it is true, no express contract between this plaintiff and the defendant company, but there was

privity in estate; both were in under the Erie Railroad Company, and the defendant company was within the protection of the covenants of the lease. The fifth request for instruction submitted by the defendant, referring to the covenants of the lease, should have been affirmed, as should also the prayer for binding instructions, and the motion of the defendant for judgment non obstante veredicto ought to have prevailed. The fourth, sixth and thirteenth specifications of error are sustained.

The judgment is reversed and the record is remitted to the court below with instruction to enter judgment in favor of the defendant non obstante veredicto.