# Rundell & Company, Appellants, *v.* Lehigh Valley Railroad Company.

*Negligence—Railroads—Adjacent buildings — Fires — Leases — Covenant—Release of damages—Nonsuit.*

1. A railroad company cannot contract for exemption, wholly or partially, from liability for damages caused by fire, in derogation of its duty to the public as common carrier; but it is not contrary to public policy to provide for such exemption as a consideration for permitting another to place or erect and use property on its premises, where such agreement does not embrace property for the injury or destruction of which the company is liable as common carrier.

2. As an owner of property a railroad is at liberty to stipulate for any exemption that would be valid in a lease between individuals.

3. In an action against a railroad company to recover damages for the destruction by fire of certain buildings as the alleged result of the dropping of coals from a defective ash pan on one of defendant's locomotives, a compulsory nonsuit was properly entered where it appeared that the buildings were erected on land leased to the plaintiff by the railroad owning the right of way, over which by agreement defendant had the right to operate; and that such lease expressly stipulated that, in recognition of the danger from fire, the lessor was released from all claims or actions for damages arising from the construction, location or operation of the said railroad and its appurtenances, and that all rights given in the lease should extend to the heirs, executors, administrators and assigns of the parties thereto.

4. In such case the contention that the lease did not inure to the benefit of the defendant company, where it appeared from the stipulation filed that it had acquired the right to operate trains over the tracks in question, and it was so operating at the time of the fire, was without merit.

Argued March 15, 1916. Appeal, No. 34, Jan. T., 1916, by plaintiffs, from final order of C. P. Bradford Co., Sept. T., 1914, No. 148, refusing to take off a compulsory nonsuit, in case of Cora Rundell and Alfred C. Blackwell, trading and doing business as Rundell & Company, v. Lehigh Valley Railroad Company. Before

MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for the destruction of plaintiffs' building by fire communicated from the tracks of a railroad company. Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

The trial judge entered a compulsory nonsuit which the court subsequently refused to take off. Plaintiffs appealed.

*Error assigned* was in refusing to take off the nonsuit.

*T. S. Hickok* and *A. C. Fanning,* of *Fanning & Kaufman,* with them *C. B. Little,* for appellants.

*Edwin P. Young,* with him *John C. Ingham,* for appellee.

OPINION BY MR. JUSTICE POTTER, July 1, 1916:

This is an appeal from the refusal of the court below to take off a judgment of compulsory nonsuit. The plaintiffs, doing business as Rundell & Company, sought to recover damages from the Lehigh Valley Railroad Company, for the destruction by fire of certain buildings and their contents, the property of plaintiffs, which fire it was alleged was caused by negligence of the employees of defendant company, in operating a switch engine. The buildings were erected upon land leased from the Pennsylvania and New York Canal and Railroad Company, but they were not located upon its right of way. The buildings stood near the railroad tracks of the lessor company, over which by agreement the defendant company had the right to operate its trains. In leasing this ground, the railroad company was not acting as a common carrier, and it had the same right to impose terms and conditions as any private owner would have. It, therefore, inserted in the lease the following provisions:

"Tenth:—It is understood by both parties hereto that the above described premises are in dangerous proximity to the tracks and other property of the Lehigh Valley Railroad Company and that there is danger of injury or destruction by fire or other causes incident to the operation of a railroad. The party of the second part accepts this lease subject to such danger and in consideration of the low rental herein reserved agrees to and does remise, release and quitclaim the lessor from all claims or actions for damages arising from the construction, location or operation of the said railroad and its appurtenances." "All rights and liabilities herein given to, or imposed upon, either of the parties hereto shall extend to the heirs, executors, administrators, successors and assigns of such party." On March 21, 1914, plaintiffs' buildings and contents were totally destroyed by fire, which, it was alleged, was communicated to them from coals negligently dropped on the track from a defective ash pan of defendant's locomotive. Upon the trial, evidence was offered tending to sustain this allegation, but the trial judge refused to submit the case to the jury, and entered a compulsory nonsuit, upon the ground that, under the terms of the lease, the plaintiffs had no right of recovery.

In Decker v. New York Cent. & Hudson River R. R. Co., 57 Pa. Superior Ct. 432, where a similar covenant in a lease was under consideration, it was said (p. 443): "This contract did not relieve the railroad company from its duty as a common carrier or any other duty which it owed to the public. The plaintiff was acquiring the right to erect a building and use it for a purpose which, because of the location and circumstances, exposed it to destruction by fire. There is no rule of public policy which forbade the railroad company to enter into a covenant that it, its successors and assigns, should be exempted from liability for such loss by fire, even though that loss occurred through the negligence of some of its employees." In Stoneboro & Chautauqua Lake Ice Co. v. Lake Shore & Mich. Southern Ry. Co.,

238 Pa. 289, this court, speaking through Mr. Justice STEWART, said (p. 290) : "That a railroad company may, by contract with the owner of a private siding, exempt itself from liability on account of negligence in the use and operation of such siding, rests distinctly on the ground that the railroad company owes no duty to the public in connection therewith. It may be required to deliver cars thereon and take them away in order to meet the demands of the party whose siding it is, but only at the instance of the party owning the siding or of one having a right to its exercise. Such siding is private property pure and simple, which the owner has built for his own convenience, and over which the railroad company has no control whatever; and it is a matter of entire indifference to the public whether it is maintained or not." In the case just cited, a clear distinction is made between the ability of a railroad company to contract for protection from the results of its negligence when using a private switch belonging to another person or persons, even though constructed on its right of way, and when using its own switch, in which the public also has rights. As to the latter, it was said (p. 294) : "A duty to the public attaches necessarily whenever the thing operated or exercised is impressed with a public use; and whenever this is the case the duty to the public cannot be made the subject of private contract modifying or in any way controlling its legal consequences." A sound statement of the general rule upon the question involved, is also found in 33 Cyc. 1330, where it is said: "A railroad company cannot contract for exemption, wholly or partially, from liability for damages caused by fire, in derogation of its duty to the public as common carrier; but it is not contrary to public policy to provide for such exemption as a consideration for permitting another to place or erect and use property on its premises where such agreement does not embrace property for the injury or destruction of which the company is liable as common carrier."

In the present case, the lease was not made in pursuance of any duty required of the lessor as a common carrier. As owner of the ground it was at liberty to stipulate for any exemption that would be valid in a lease between individuals. Plaintiffs desired to occupy the ground as a site for a hay and grain warehouse, which would make the place peculiarly hazardous with respect to fire. This danger was specially recognized, and the release covered all claims for damages arising from the location or operation of the railroad. This would certainly include the risk of mistakes and lack of proper care by employees. It is well known that the human factor is the most uncertain element in the operation of a railroad, and possible failure or neglect in the discharge of duty, must be anticipated as incidental thereto. The reason for the insertion of the tenth paragraph is plainly stated as being the danger of injury or destruction by fire incident to the operation of the railroad, and plaintiffs agreed to accept the lease subject to such danger, and, in consideration of the low rental it was to pay, it agreed to bear the risk from fire. Counsel for appellee, in their argument, say, with much force, "If the operations were at all times carried on in the ideal way suggested, then there would be no liability on the part of the defendant company in any event. The defendant can only be held liable on the ground of its negligence. If it were not negligent it would not be responsible. Operations of the character suggested by the appellants would be entirely free from negligence, and consequently free from liability. In such case, under the construction suggested by appellants, the tenth paragraph would be superfluous, it would be without any purpose whatever." The language is clear and unequivocal. The purpose must have been to release the lessor from liability to which it would otherwise have been subject, and that would have been for negligence. Aside from that, the release would have been meaningless, and presumably would not have been executed.

Counsel for appellants argue that at any rate the release does not go to the extent of relieving from liability for injuries inflicted by wilful or wanton negligence. We do not find in the statement any such charge against defendant, nor does that question seem to have been suggested in the court below. Nor does the evidence warrant a charge of wilful or wanton negligence. The theory of plaintiffs was that the fire resulted from coals of fire dropped on the track from a defective ash-pan of a switch engine; the coals being stirred up by the slipping of the engine wheels in starting, and in that way thrown against the building. But the evidence shows that the engine was not at the time standing within the distance which the coals could be thrown by the wheels as fixed by the witnesses. It may have been negligence to use a defective ash-pan on the engine, but that such use was in reckless or heedless disregard of plaintiffs' rights, or with consciousness that it would result in injury to them was not shown.

It is also contended that the release does not inure to the benefit of defendant company. But it appears from the stipulation filed that it acquired the right to operate trains over the tracks in question, and that it was so operating at the time of the fire. A similar question was involved in Decker v. New York Cent. & Hudson River R. R. Co., 57 Pa. Superior Ct. 432, and was there decided adversely to appellant's contention. In the opinion in that case it is pointed out that the operating railroad is under the contract brought within the covenants of the lease, and is entitled to their protection.

The assignments of error are overruled, and the judgment is affirmed.