## PAYNE, Director General of Railroads, v. NATIONAL TRANSIT CO.

(District Court, W. D. Pennsylvania. May Term, 1921.)

No. 2427.

1. **Indemnity ⬤⟹9(1)—Contract held to cover loss through negligence of indemnitee.**

   A contract by which a railroad company granted the right to defendant to lay an oil pipe line under the railroad tracks contained a covenant by defendant to indemnify and save harmless the railroad company "from and against all claims, suits, damages, costs, losses, and expenses in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe, including the breaking of the same or the leaking of oil from the same." While the railroad was being operated by plaintiff, Director General of Railroads, the pipe broke and flooded the track and adjacent ground with oil, which took fire from a switch engine, and a manufacturing plant adjoining the right of way was burned. A judgment for the loss was recovered against plaintiff, which he paid. *Held*, that defendant was liable on its covenant of indemnity, though negligence of plaintiff's servants operating the engine, not wanton or willful, contributed to the loss.

2. **Indemnity ⬤⟹7—Director General held entitled to benefit of contract indemnifying railroad company against losses in operation.**

   The Director General, succeeding to the entire control and operation of the property of the railroad company with responsibility for damages caused during such operation, danger of which was enhanced by the presence of defendant's pipe line, was also entitled to the benefit of the company's contract for indemnity.

3. **Indemnity ⬤⟹3—Contract held not void, as against public policy, because it indemnified against indemnitee's negligence.**

   In the absence of legislation or decision declaring the public policy of a state, a court cannot refuse to enforce a contract as against public policy, because it indemnifies against the indemnitee's negligence, where such negligence was not wanton or willful.

4. **Indemnity ⬤⟹15(7)—Evidence held not inadmissible because tending to contradict judgment in another action in which issues were different.**

   A judgment was recovered against plaintiff, Director General of Railroads, for loss of property from fire alleged to have been caused by negligence in operating a defective switch engine. In an action by plaintiff to recover the amount of such judgment on a contract of indemnity executed by defendant, which was notified of the former suit, and was bound by the judgment therein, it was incumbent on plaintiff to show that the negligence of his servants was not wanton or willful. *Held*, that testimony on that issue was admissible, though it tended to show that the fire was not caused by their negligence, but originated from another cause.

At Law. Action by John Barton Payne, Director General of Railroads, against the National Transit Company. On motion by defendant for new trial. Denied.

Albert L. Thomas and Geo. F. Davenport, both of Meadville, Pa., for plaintiff.

Edward C. Breene and Hugh C. Dorworth, both of Oil City, Pa., for defendant.

THOMSON, District Judge. This is a motion on the part of the defendant for a new trial. The case is one of interest and importance, not only because of the amount, but also because of the legal questions,

involved. Briefly stated, the suit is by the Director General of Railroads to recover on a covenant of indemnity the amount of a certain judgment rendered against the plaintiff for damages caused by the destruction from fire of the plant of the Joseph Reid Gas Engine Company, through negligence in the operation of the railroad. The legal questions relied upon in support of defendant's motion are the same as those urged before the court on the trial of the case. These, during the course of the trial, were very fully argued by counsel, and carefully considered and passed upon by the court, as will appear in the court's charge to the jury.

[1] The contract under which the plaintiff seeks to recover was between the Erie Railroad Company and the defendant, entered into in 1898, the same being made subject to the covenants contained in a former contract between the parties. Under the contract, for the full consideration, defendant was permitted to construct and maintain its pipe lines for the transportation of oil under the railroad tracks. In December, 1918, the pipe line sprung a leak, from which the escaping oil spread over the railroad tracks and right of way, to and along the site of the buildings of the Gas Engine Company, closely adjacent to the south line of the right of way. When the oil had been only partially removed, a switch engine, while passing over the oil area, ignited the oil, and the spreading flames set fire to and burned the Gas Engine Company's plant. The latter brought suit against the Director General, who was operating the road at the time, alleging that the engine was defectively equipped and was driven over the oil area when dropping coals from the fire box, which resulted in the fire and plaintiff's loss. The defendant herein was given notice to appear and defend said action, which it failed to do, and a verdict was entered against the Director General for $183,527.02, which, after a motion for a new trial had been overruled, the Director General paid. To recover the amount of that payment, with interest, this suit is brought.

The covenant of the contract sued on is as follows:

"Said party of the second part does further agree to indemnify and save harmless the party of the first part from and against all claims, suits, damages, costs, losses, and expenses, in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe (whether heretofore or hereafter laid), including the breaking of the same or the leaking of oil from the same."

The first question raised at the trial, and urged on this motion, is: Does the indemnifying covenant extend to damages resulting from the negligence of the indemnitee? It is clear that this is an indemnifying covenant, and while it does not in express words indemnify against the negligence of the indemnitee, its agents and employees, it clearly does indemnify the party of the first part "from and against all claims, damages, losses," etc., *"in any manner resulting from or arising out of* the laying, maintenance, renewal, repair, use, or existence of said pipe, including the breaking of the same or the leaking of oil from the same."

The true intent of the contract must be determined in the light of the circumstances in which the parties were placed when the contract was

made, and the evident purpose they had in view. The railroad was not contracting in its capacity as a common carrier. The parties stood to each other on an independent footing. The railroad was not bound to give its consent to the laying of the line under its tracks. It could grant or withhold its consent, as it chose, and hence had the right to impose in the contract any reasonable conditions upon the grant. It is reasonably clear that it was the very purpose of the covenant to leave the railroad company in the same position as to liability as it occupied before the right or easement was granted, and appropriate words were used expressive of that purpose. The parties clearly contemplated that so dangerous and inflammable a product as oil, conveyed under the tracks, might by defective piping, breaks, or leakage reach or flood the tracks, and in the operation of trains endanger the lives or property being transported thereover. It was from such a condition, not unnaturally occurring, that the railroad company was seeking indemnity from damages and loss in any manner arising. The parties must be presumed to have realized the danger naturally arising to the railroad company from the breakage or leakage of the pipe line, and the defendant by its contract took the grant with knowledge of the dangers incident to the operation of the railroad, and expressly undertook to indemnify the railroad from any loss or damage it might sustain *from any cause whatsoever* arising out of the laying, construction and maintenance of the line, or the leakage of oil therefrom.

It is true that the courts have said that, in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence. If it is clear, from the language used, that it was intended to cover losses arising from the negligence of the indemnitee, this is sufficient. Both parties knew, and must be presumed to have contemplated, that the human element enters into the operation of trains. The negligence, in a greater or less degree, of the servants of a common carrier, always constitutes an element of risk. Railroad tracks flooded with oil necessarily produce a dangerous condition, which the railroad company sought by its contract to overcome. Confronted by such situation, railroad employees would have to exercise their judgment, which might be good or might be defective, with the result that they might or might not be chargeable with negligence. It was just as essential that the railroad company be protected from the dangers and damage resulting from error of judgment or negligent action of its employees, when confronted with a hazardous situation caused by the breaking of the pipe line or the leakage of oil from the line, as it was to be protected from the negligence of the oil company. The true purpose for which the indemnity covenant was executed should be determined by the general conditions likely to arise, and the hazardous loss naturally incident to the operation of the road by the railroad company. To hold that the covenant does not indemnify against the negligence of the plaintiff's servants would be practically to destroy it as a covenant of indemnity. The servants of the plaintiff did not produce the hazardous situation. That was caused by the transit company, without the default of the plaintiff, either directly or

indirectly. The negligence chargeable against plaintiff is in pursuing a certain course of action when confronted with that situation.

Keeping in mind that contracts of indemnity must receive a reasonable construction, so as to carry out, rather than defeat, the purpose for which they were executed, I think the words of the covenant are broad enough to sustain the action of the plaintiff. I will not stop to discuss the numerous cases cited by counsel on both sides. There is really no serious controversy over the general principles which are applicable; it is largely a question of the proper interpretation to be put upon the words used in the indemnifying covenant. In harmony with the views of the court may be cited Decker v. N. Y. C. R. R. Co., 57 Pa. Super. Ct. 432; Rundell & Co. v. Lehigh Valley R., 254 Pa. 528, 98 Atl. 1054; P., C., C. & St. L. Ry. Co. v. Mahoney, 148 Ind. 196, 46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503; Bates v. Old Colony R. Co., 147 Mass. 255, 17 N. E. 633; Russell v. P., C., C. & St. L. Ry. Co., 157 Ind. 305, 61 N. E. 678.

[2] It is contended, in the second place, that the indemnity covenant is personal with the Erie Railroad Company, and does not inure to the benefit of the Director General. This question would appear to be ruled by the case of Decker v. N. Y. Central & Hudson R. R. Co., 57 Pa. Super. Ct. 432, and the case of Rundell & Co. v. Lehigh Valley R. Co., 254 Pa. 529, 98 Atl. 1054. In the Rundell Case, the defendant was neither a successor nor an assignee, but had trackage rights over the tracks of the Pennsylvania & New York Canal & Railroad Company. In this case the Director General had trackage rights over the tracks of the Erie Railroad Company, and had every right, in fact, possessed by the latter company, so far as the operation of the road was concerned. The contract with the transit company was with and inured to the benefit of the railroad company. The transportation under the railroad tracks and right of way by the pipe line, of petroleum oil was necessarily, however, attended with some danger, which called for care and vigilance on the part of the transit company to see that the railroad tracks, or property, equipment, and operation of the railroad, were not injured or impeded thereby. The easement so granted by the railroad company was subject to the covenant of indemnity under which this suit is brought. The Director General, under the powers granted, took possession and control of the physical properties of the Erie Railroad Company, and was therefore liable for all actions accruing during his control and possession. The possession and control of the United States was an absolute, and not a divided, possession and control. The railroad company had no right whatever to exercise any control over the operations of the system during federal control, and was not liable for any default or negligence on the part of those employed by the Director General. The latter, being liable in this case for the damages occasioned by the loss, is also entitled to the benefit of the contract which was taken by the company to indemnify against such loss. The complete possession and control carried with it the burden of responsibility for loss, and the corresponding benefit arising from the indemnity of the defendant against such loss. Both were included in the contract in which the easement was granted to the

transit company, and the Director General stands in the place of the railroad company, subject to the liabilities and entitled to the benefits under the contract.

I will not follow the technical discussion of the defendant relative to the question of covenants which run with the land. Though there be no privity of contract between the original grantor and the present plaintiff, under the authorities there is privity of estate, and the covenant accrued in this case to the plaintiff, who was in full control and operation of the railroad property.

[3] It is contended, in the third place, that even if the covenant covers negligence of the indemnitee, and inures to the benefit of the Director General, it is void as against public policy. It is said in Corpus Juris, vol. 13, p. 426:

"In the absence of any legislative prohibition of a particular agreement which may be brought before a court, the latter, to declare it void, must find that such contract has a tendency to injure the public good or is inconsistent with public policy and good morals as to the consideration or thing to be done. The public policy of a state, of which the courts will take notice and to which they give effect, must be determined from its Constitution, laws, and judicial decisions, and the courts will not resort to other sources of information."

In Enders v. Enders, 164 Pa. 271, 30 Atl. 129, 27 L. R. A. 56, 44 Am. St. Rep. 598, it is laid down that public policy in the administration of the law by the courts is essentially different from what may be public policy in view of the legislation, and in the absence of any statute forbidding the contract, the court must find as a fact that it will have a tendency to injure the public or is against the public good. In Pope Manufacturing Co. v. Gormully, 144 U. S. 224, 12 Sup. Ct. 632, 36 L. Ed. 414, the court said:

"It is impossible to define with accuracy what is meant by that public policy for an interference and violation of which a contract may be declared invalid. It may be understood in general that contracts which are detrimental to the interests of the public as understood at the time fall within the ban."

Many cases have held, in substance, that the power of the courts to declare a contract void, as being in contravention of public policy, is a very delicate power, and should be exercised only in cases free from doubt; that a court cannot refuse its aid to enforce a contract on doubtful and uncertain grounds; that the burden is on the defendant to show that its enforcement would be in violation of settled public policy or injurious to the morals of the people.

Applying the ordinary tests, I am satisfied that the contract in suit, indemnifying the railroad company, is not invalid as against public policy. There is no legislative prohibition against such contract, and it cannot be fairly said that it is detrimental to the interests of the public. The utmost liability of contracting, when entered into fairly and voluntarily, should be recognized and upheld as one of the most valued rights, unless to do so would be detrimental to the public interests. The contract in suit did not take away or lessen any right possessed by any member of the public. If a third person was injured, then, by the negligence of the servants of the railroad company, growing out of

the situation occasioned by the grant to the transit company, such person so injured was entitled to recover full compensation for his loss, irrespective of the contract in question. The railroad company did not strive to exonerate itself from any liability to third persons, but did seek to hold the transit company ultimately liable for the loss, if arising out of the permission to lay its pipe lines and operate the same under its right of way. Both parties to the contract recognized the increased hazard which the grant created. The railroad company had the right to protect itself against such increased hazard, and in doing so it did not injuriously affect the rights of the public, and the transit company voluntarily assumed the liability of such increased hazard. Such a contract is not against public policy, and is therefore valid and binding in law.

As I view the legal situation, under the facts as established, the plaintiff became liable to the Reid Gas Engine Company for the loss by fire of its business, occasioned by the railroad company's negligence, under the circumstances, in the operation of its switch engine; but the plaintiff in this case is entitled to recover on its covenant of indemnity the amount of the judgment recovered, notwithstanding such negligence, unless it were found by the jury as a matter of fact that the loss was occasioned by the wanton or willful negligence of the plaintiff's employees in the operation of the switch engine which occasioned the fire. The definition of wanton and willful negligence, as given by the court to the jury, I think, was not only adequate, but legally accurate. Nor do I think any substantial error can be found in the court's answers to the various points submitted.

[4] In the last place, defendant contends that the verdict in the original case conclusively settled the question as to how the fire originated, and that the admission of the testimony of Drs. Lee and Landon was erroneous. To determine this, we must look at the nature of the respective suits, and the issue of fact to be determined in each. The former was an action of trespass, based on defendant's alleged negligence. The trial court in that action would necessarily confine the proof of negligence to that specifically pleaded by the plaintiff, although some other form of negligence, if pleaded, might have been equally available. In other words, its general right to recover rested on proof of negligence of the defendant's servants, whatever its character, which was the proximate cause of the loss. The amount of the verdict there is conclusive on the defendant here, as the latter had full notice and opportunity to appear and defend the action. That verdict conclusively established also the nature of the action; that is, the fact that the verdict in that case was based on the negligence of the defendant's employees.

This action is based on contract, on the covenant of indemnity, against which ordinary negligence, which was sufficient to support that action, is no defense against this. The negligence which would have exonerated as against the covenant sued on must be wanton or willful, and every fact, every circumstance, which would tend to throw light on that question, is relevant as a matter of evidence. To illustrate: In the former action there was put in issue the question as to the con-

dition of the fire box of the engine; the plaintiff there alleging that, by reason of its defective condition, coals of fire were dropped into the oil, which ignited it. This was denied by defendant. If Drs. Lee and Landon had there testified that in their opinion the fire was caused by fumes rising from the oil, and ignited from contact with the furnace fires, how could the exclusion of their testimony, or that of the engineer and fireman, by virtue of the pleading, exclude such testimony in this case, where the issue of fact is different, and where wantonness or willfulness is the question rather than ordinary negligence. If such testimony tends to throw light on the viewpoint, on the mental attitude, of the operators of the engine, as to the actual danger of the situation which confronted them, such testimony was competent. It was on this theory, and this alone, that the evidence was admitted.

It is not the duty of the court to weigh the evidence in a nicely adjusted balance, to determine on which side the preponderance rests. This was a question for the jury, and having passed upon it, after a most careful trial and most able arguments, the court will not assume, even if his judgment did not concur, to substitute his opinion for the opinion of the jury.

Fully appreciating the importance of the case to the parties concerned, and the substantial character of the several legal questions involved, I have carefully considered the various reasons assigned, and am not persuaded that any of them would justify the granting of a new trial.

The motion for a new trial is therefore overruled.