**NATIONAL TRANSIT CO. v. DAVIS, Director General of Railroads.**

(Circuit Court of Appeals, Third Circuit. July 2, 1925.)

No. 3259.

1. **Railroads** ⬅73(4)—**Grant of use of right of way for laying oil pipe lines, unhampered by questions of public policy.**

Contract, by which railroad granted permissive use of roadbed for laying of oil pipe lines, in no way concerned or affected its duty as common carrier, and general right to contract was unhampered by any questions of public policy.

2. **Indemnity** ⬅9(1)—**Agreement to indemnify railroad for losses caused by laying oil pipe held to contemplate losses to third parties due partly to railroad employee's negligence.**

Agreement of oil company, permitted to lay pipes along right of way, to indemnify railroad for any damage resulting to it from such acts, *held* to contemplate indemnity for damages to third parties for which railroad might be liable by reason of negligence of its employees, as well as damages to property of railroad.

3. **Indemnity** ⬅7—**Director General of Railroads entitled to recover under indemnity contract of oil company with railroad.**

Director General of Railroad, who had been forced, while in control of railroad taken over by government during war, to pay judgment for damages caused by fire from oil leaking from pipe, *held* entitled to sue oil company on indemnity contract with railroad, notwithstanding he was not party to contract.

In Error to the District Court of the United States for the Western District of Pennsylvania; Seward Thomson, Judge.

Action by James C. Davis, Director General of Railroads, against the National Transit Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 300 F. 411.

Breene & Jobson, Trax & Parker, and Wm. M. Parker, all of Oil City, Pa., for plaintiff in error.

Albert L. Thomas, of Meadville, Pa., and John E. Walker, of New York, N. Y., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. By contract dated April 22, 1898, the Erie Railroad, a corporation of New York, permitted the National Transit Company, a corporation of New York, engaged in transporting oil by pipe line, to lay its pipe on the railroad's right of way. By such contract the latter company agreed "to indemnify and save harmless the party of the first part from and against all claims, suits, costs, losses and expenses, in any manner resulting from, or arising out of, the laying, maintenance, renewal, repair, use or existence of said pipe (whether heretofore or hereafter laid) including the breaking of the same or the leaking of oil from the same." During the war period the road was taken over and operated by the government, and the transit company continued its contractual permissive use of the railroad's property. On December 28, 1918, which was during that period and while the transit company was pumping oil through its three-inch pressure line laid under the railroad's tracks in Oil City, Pa., such line broke and flooded the tracks of the railroad with oil. In some manner this oil was set on fire by a switching engine of the railroad, and a large engine factory belonging to a third party, which abutted the railroad tracks, was burned. Thereafter the owners of this factory brought suit in a state court of Pennsylvania against the Director General of Railroads

for the damages suffered by them. Thereupon the Director General of Railroads, conceiving the transit company had by such contract agreed "to indemnify and save harmless" the railroad "from and against all claims and suits * * * in any manner resulting from or arising out of * * * the use of said pipe, * * * including the breaking of the same, or the leaking of oil from the same," and that this claim or suit had resulted from the breaking or leaking of the pipe, notified the transit company to intervene and defend the suit. In response to this notice and request, the transit company did nothing. Thereupon the Director took up the burden of defense, but was unsuccessful, and the factory owners recovered verdict and judgment for the damages resulting from the oil fire. This verdict the transit company failed to pay, whereupon it was paid by the Director General and the present suit brought by him against the transit company for breach of the contract to indemnify. On trial he recovered a verdict for the full amount of damages sustained by him by the suit of the factory company. On entry of judgment on such verdict the transit company sued out this writ of error.

The questions involved therein are so fully considered and satisfactorily disposed of in the opinion of the trial judge printed in part, in the margin,[1] in disposing of the motion for a new trial, that we might well rest our decision on such opinion. But the amount of the verdict and the importance of the questions involved warrant a brief expression of our concurring views.

[1, 2] Turning to the contract, which is the underlying feature of all questions involved, we note that such contract in no way concerned or affected the duty of the railroad as a common carrier. It was simply an agreement by which the transit company obtained permission to use the property of the railroad in carrying on its own business of transporting oil. Such being the case, it follows that no questions of public policy are involved in, or affected by, the contract, and therefore the parties were unhampered in their general right to contract with each other as they saw fit and, as pertinent to the present contract, could contract freely as to the effect or noneffect of their own negligence and stipulate for exemption from the consequences of such negligence if they so desired. Manifestly in making the contract the parties contemplated the possible breaking of pipes, the leakage of oil, its inflammable character, the continued usual operation of the railroad, the fire dangers incident to sparks and live coal from passing engines, and the to be expected negligence of railroad employees and the fire injury to abutting property. Moreover, it is clear that the parties were contracting not so much against

---

[1] "The contract under which the plaintiff seeks to recover was between the Erie Railroad Company and the defendant, entered into in 1898; the same being made subject to the covenants contained in a former contract between the parties. Under the contract, for the full consideration, defendant was permitted to construct and maintain its pipe lines for the transportation of oil under the railroad tracks. In December, 1918, the pipe line sprung a leak, from which the escaping oil spread over the railroad tracks and right of way, to and along the site of the buildings of the Gas Engine Company, closely adjacent to the south line of the right of way. When the oil had been only partially removed, a switch engine while passing over the oil area, ignited the oil, and the spreading flames set fire to and burned the Gas Engine Company's plant. The latter brought suit against the Director General, who was operating the road at the time, alleging that the engine was defectively equipped and was driven over the oil area when dropping coals from the fire box, which resulted in the fire and plaintiff's loss. The defendant herein was given notice to appear and defend said action, which it failed to do, and a verdict was entered against the Director General for $183,527.02, which, after a motion for a new trial had been overruled, the Director General paid. To recover the amount of that payment, with interest, this suit is brought.

"The covenant of the contract sued on is as follows: 'Said party of the second part does further agree to indemnify and save harmless, the party of the first part from and against all claims, suits, damages, costs, losses and expenses, in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe (whether heretofore or hereafter laid), including the breaking of the same or the leaking of oil from the same.'

"The first question raised at the trial, and urged on this motion, is: Does the indemnifying covenant extend to damages resulting from the negligence of the indemnitee? It is clear that this is an indemnifying covenant, and while it does not in express words indemnify against the negligence of the indemnitee, its agents and employees, it clearly does indemnify the party of the first part 'from and against all claims, damages, losses,' etc., 'in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of said pipe, including the breaking of the same or the leaking of oil from the same.'

"The true intent of the contract must be determined in the light of the circumstances in which the parties were placed when the contract was made, and the evident purpose they had in view. The railroad was not contracting in its capacity as a common carrier. The parties stood to each other on an independent footing. The railroad was not bound to give its consent to the laying of the line under its

damages to the railroad's own property, but as to the damages of third parties, including, of course, abutting property owners, since third parties only could make the claims or bring the suits against which the contract was to indemnify the railroad. And as such third parties so suffering damage from the

escape of the transit company's oil could only make claims or bring suits against the railroad when the latter was in some way in concurring fault in relation to such oil, it would seem clear that if the indemnifying clause of the contract were limited to claims and suits where the railroad was blameless,

tracks. It could grant or withhold its consent, as it chose, and hence had the right to impose in the contract any reasonable conditions upon the grant. It is reasonably clear that it was the very purpose of the covenant to leave the railroad company in the same position as to liability, as it occupied before the right or easement was granted, and appropriate words were used expressive of that purpose. The parties clearly contemplated that so dangerous and inflammable a product as oil, conveyed under the tracks, might by defective piping, breaks or leakage, reach or flood the tracks, and in the operation of trains endanger the lives or property being transported thereover. It was from such a condition, not unnaturally occurring, that the railroad company was seeking indemnity from damages and loss in any manner arising. The parties must be presumed to have realized the danger naturally arising to the railroad company from the breakage or leakage of the pipe line, and the defendant by its contract took the grant with knowledge of the dangers incident to the operation of the railroad, and expressly undertook to indemnify the railroad from any loss or damage it might sustain from any cause whatsoever arising out of the laying, construction and maintenance of the line, or the leakage of oil therefrom. It is true that the courts have said that in order to indemnify against the indemnitee's negligence, the language must be clear and unequivocal; but I do not understand that the indemnifying contract must contain express words against negligence. If it is clear from the language used, that it was intended to cover losses arising from the negligence of the indemnitee, this is sufficient. Both parties knew, and must be presumed to have contemplated, that the human element enters into the operation of trains. The negligence in a greater or less degree, of the servants of a common carrier, always constitutes an element of risk. Railroad tracks flooded with oil, necessarily produce a dangerous condition, which the railroad company sought by its contract to overcome. Confronted by such situation, railroad employees would have to exercise their judgment, which might be good or might be defective, with the result that they might or might not be chargeable with negligence It was just as essential that the railroad company be protected from the dangers and damage resulting from error of judgment or negligent action of its employees when confronted with a hazardous situation caused by the breaking of the pipe line or the leakage of oil from the line, as it was to be protected from the negligence of the oil company. The true purpose for which the indemnity covenant was executed should be determined by the general conditions likely to arise, and the hazardous loss naturally incident to the operation of the road by the railroad company. To hold that the covenant does not indemnify against the negligence of the plaintiff's servants would be practically to de-

stroy it as a covenant of indemnity. The servants of the plaintiff did not produce the hazardous situation. This was caused by the transit company, without the default of the plaintiff either directly or indirectly. The negligence chargeable against plaintiff is in pursuing a certain course of action when confronted with that situation.

"Keeping in mind that contracts of indemnity must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed, I think the words of the covenant are broad enough to sustain the action of the plaintiff. I will not stop to discuss the numerous cases cited by counsel on both sides. There is really no serious controversy over the general principles which are applicable; it is largely a question of the proper interpretation to be put upon the words used in the indemnifying covenant. In harmony with the views of the court may be cited Decker v. N. Y. C. R. R. Co., 57 Pa. Super. Ct. 432; Rundell & Co. v. Lehigh Valley R. R., 254 Pa. 529, 98 A. 1054; P., C., C. & St. L. Ry. Co. v. Mahoney, 148 Ind. 196, 46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503; Bates v. Old Colony R. R. Co., 147 Mass. 255, 17 N. E. 633; Russell v. P., C., C. & St. L. Ry. Co., 157 Ind. 305, 61 N. E. 678, 55 L. R. A. 253, 87 Am. St. Rep. 214.

"It is contended, in the second place, that the indemnity covenant is personal with the Erie Railroad Company, and does not inure to the benefit of the Director General. This question would appear to be ruled by the case of Decker v. N. Y. Central & Hudson R. R. Co., 57 Pa. Super. Ct. 432, and the case of Rundell & Co. v. Lehigh Valley R. R. Co., 254 Pa. 529, 98 A. 1054. In the Rundell Case, the defendant was neither a successor nor an assignee, but had trackage rights over the tracks of the Pennsylvania & New York Canal & R. R. Co. In this case, the Director General had trackage rights over the tracks of the Erie Railroad Company, and had every right, in fact, possessed by the latter company, so far as the operation of the road was concerned. The contract with the transit company was with and inured to the benefit of the railroad company. The transportation under the railroad tracks and right of way by the pipe line, of petroleum oil, was necessarily, however, attended with some danger, which called for care and vigilance on the part of the transit company to see that the railroad tracks or property, equipment, and operation of the railroad were not injured or impeded thereby. The easement so granted by the railroad company was subject to the covenant of indemnity under which this suit is brought. The Director General, under the powers granted, took possession and control of the physical properties of the Erie Railroad Company, and was, therefore, liable for all actions accruing during his control and possession. The possession and control of the United States was an absolute, and not a divided, pos-

there would in point of fact be nothing to which such indemnifying clause would apply. On the contrary, if the contract be construed and enforced in the light of the situation actually in view of the contracting parties, to wit, the normal continued operation of the road with the human and usual' incident of occasional negligence of railroad employees and the consequent dangers resulting from flooding its tracks with oil, then we effect the purpose of the parties' when we hold the indemnifying clause of the contract covered a situation where the transit company's escaped oil was the real cause of damage to third parties although incident thereto was the concurring element of that negligence of

---

session and control. The railroad company had no right whatever to exercise any control over the operations of the system during federal control, and was not liable for any default or negligence on the part of those employed by the Director General. The latter, being liable in this case for the damages occasioned by the loss, is also entitled to the benefit of the contract which was taken by the company to indemnify against such loss. The complete possession and control carried with it the burden of responsibility for loss, and the corresponding benefit arising from the indemnity of the defendant against such loss. Both were included in the contract in which the easement was granted to the transit company, and the Director General stands in the place of the railroad company, subject to the liabilities and entitled to the benefits under the contract.

"I will not follow the technical discussion of the defendant, relative to the question of covenants which run with the land. Though there be no privity of contract between the original grantor and the present plaintiff, under the authorities there is privity of estate, and the covenant accrued in this case to the plaintiff, who was in full control and operation of the railroad property.

"It is contended, in the third place, that even if the covenant covers negligence of the indemnitee, and inures to the benefit of the Director General, it is void as against public policy. It is said in Corpus Juris, vol. 13, p. 426: 'In the absence of any legislative prohibition of a particular agreement which may be brought before a court, the latter to declare it void must find that such contract has a tendency to injure the public good or is inconsistent with public policy and good morals as to the consideration or thing to be done. The public policy of a state of which the courts will take notice and to which they give effect, must be determined from its Constitution, laws, and judicial decisions, and the courts will not resort to other sources of information.'

"In Enders v. Enders, 164 Pa. 271, 30 A. 129, 27 L. R. A. 56, 44 Am. St. Rep. 598, it is laid down that public policy in the administration of the law by the courts, is essentially different from what may be public policy in view of the legislation, and in the absence of any statute forbidding the contract, the court must find as a fact that it will have a tendency to injure the public or is against the public good. In Pope Manufacturing Co. v. Gormully, 144 U. S. 233, 12 S. Ct. 636, 36 L. Ed. 414, the court said: 'It is impossible to define with accuracy what is meant by that public policy for an interference and violation of which a contract may be declared invalid. It may be understood in general that contracts which are detrimental to the interests of the public as understood at the time fall within the ban.'

"Many cases have held, in substance, that the power of the courts to declare a contract void, as being in contravention of public policy, is a very delicate power and should be exercised only in cases free from doubt; that a court cannot refuse its aid to enforce a contract on doubtful and uncertain grounds; that the burden is on the defendant to show that its enforcement would be in violation of settled public policy or injurious to the morals of the people.

"Applying the ordinary tests, I am satisfied that the contract in suit, indemnifying the railroad company, is not invalid as against public policy. There is no legislative prohibition against such contract, and it cannot be fairly said that it is detrimental to the interests of the public. The utmost liability of contracting, when entered into fairly and voluntarily, should be recognized and upheld as one of the most valued rights, unless to do so would be detrimental to the public interests. The contract in suit did not take away or lessen any right possessed by any member of the public. If a third person was injured, then, by the negligence of the servants of the railroad company, growing out of the situation occasioned by the grant to the transit company, such person so injured was entitled to recover full compensation for his loss, irrespective of the contract in question. The railroad company did not strive to exonerate itself from any liability to third persons, but did seek to hold the transit company ultimately liable for the loss, if arising out of the permission to lay its pipe lines and operate the same under its right of way. Both parties to the contract recognized the increased hazard which the grant created. The railroad company had the right to protect itself against such increased hazard, and in doing so it did not injuriously affect the rights of the public, and the transit company voluntarily assumed the liability of such increased hazard. Such a contract is not against public policy, and is therefore valid and binding in law.

"As I view the legal situation, under the facts as established, the plaintiff became liable to the Reid Gas Engine Company for the loss by fire of its business, occasioned by the railroad company's negligence under the circumstances, in the operation of its switch engine; but the plaintiff in this case is entitled to recover on its covenant of indemnity the amount of the judgment recovered, notwithstanding such negligence, unless it were found by the jury as a matter of fact, that the loss was occasioned by the wanton or willful negligence of the plaintiff's employees in the operation of the switch engine which occasioned the fire.

"The definition of wanton and willful negligence as given by the court to the jury, I think was not only adequate but legally accurate. Nor do I think any substantial error can be found in the court's answers to the various points submitted."

its employees incident to the usual operation of railroads. In that respect, and indeed in tersely summing up the whole situation, the court below well said:

"The contract in suit did not take away or lessen any right possessed by any member of the public. If a third person was injured, then, by the negligence of the servants of the railroad company growing out of the situation occasioned by the grant to the transit company, such person so injured was entitled to recover full compensation for his loss, irrespective of the contract in question. The railroad company did not strive to exonerate itself from any liability to third persons, but did seek to hold the transit company ultimately liable for the loss, if arising out of the permission to lay its pipe lines and operate the same under its right of way. Both parties to the contract recognized the increased hazard which the grant created. The railroad company had the right to protect itself against such increased hazard, and in doing so it did not injuriously affect the rights of the public, and the transit company voluntarily assumed the liability of such increased hazard. Such a contract is not against public policy, and is therefore valid and binding in law."

[3] Seeing then the transit company could lawfully indemnify the railroad against damage even though the latter's negligence was involved, and that, in point of fact, it did, by its contract, so indemnify, we next inquire whether the Director General has a right of action upon such contract. It is true the contract of the transit company, as written, was with the railroad alone, but, being with a public agency whose property could in time of war necessity be taken over and operated by the government, the contract must be considered and enforced as made with the possibility of such contingency arising. And if it arose could the government, on the one hand, although not a party to the contract, tear up, without liability for damage, the transit company's lines; or, on the other hand, could the transit company, continuing to avail itself of the benefits of the contract, continuing to pipe its oil on the right of way and continuing to subject the operation of the road in the government's hand to such added perils, could either one be heard to say no privity of estate existed between them? The logical and equitable answer is that the transit company, by its continuing to avail itself of the benefit of the contract, is estopped from denying its liability to the contract's obligations.

In so holding we are of opinion that nei-ther in the questions discussed as above, or in the other points raised in the case, all of which have had our attention, did the court below commit error. Its judgment is therefore affirmed.