SCHAUER, J.
Plaintiff, by written lease dated September 21, 1934, hired from defendant a storeroom in a building owned by the latter. During the tenancy, the term of which included the dates here involved, the defendant was informed that plaintiff had sustained damage to personal property owned by him and kept in the leased storeroom, from rain water which had entered the premises. Such rain water appeared to have soaked through the northern exterior wall of the building in an area which included the space occupied by an earthenware drain pipe designed to carry rain water from the roof of the building. Attached to and built flush against the outside of this wall was an advertising sign, the *Supp. 769 presence of which served to mislead both plaintiff and defendant as to the cause of the leakage.
Defendant but recently had had the roof of his building substantially renewed and promptly upon notice of the leakage, on or about November 1, 1935, made bona fide efforts through competent agents to find and stop the leak but apparently both plaintiff and defendant, influenced somewhat probably by their knowledge that the new roof had been installed only a few months before, by a competent roofing agent, placed the blame for the leak upon the sign and failed to ascertain, as subsequent events suggest they easily could have done, that the earthenware drain pipe above mentioned had become clogged.
The Bill of Exceptions, page 5, lines 22-26, states that the drain pipe “extended perpendicular, embedded in said (northern exterior) wall, from the lower point of the northern side of the roof to the ground, and then by means of a right angle elbow extended horizontally under the sidewalk to the gutter where the rain-water from the roof escaped”. The wall in which the drain pipe was embedded is the same wall through which the water appeared to leak into plaintiff’s store. A further rain occurred on November 17, 1935, and it is for damages ensuing from leakage on that occasion that plaintiff seeks to recover in this action.
On November 18, 1935, a further examination of the roof of the building and its water-shed equipment was made and water marks were observed above the flashing. A water test in the drain pipe was then made and showed that it was clogged; insertion of a “wire snake” located the stoppage at or near the elbow. It was then obvious that the flow of water from the roof entering the drain pipe was stopped or impeded by the obstruction therein; that accumulating and standing in the said drain pipe it soon soaked through such pipe, or its joints, and the wall of the building; in the event of sufficient precipitation it finally pooled on the roof, and since the walls extended about two feet above the lower portion of the roof the water finally rose above the roof-wall flashing and seeped down into the building.
The storeroom leased to plaintiff constituted only a part of the building in which it was located and defendant retained exclusive control of the roof and the drain pipe. The trial court gave judgment for plaintiff, impliedly finding *Supp. 770 that defendant was negligent in not having discovered and remedied the apparently readily ascertainable condition in the drain pipe prior to November 17th, and we think that the circumstances related, coupled with others appearing in the record, are clearly not insufficient as a matter of law to support such finding. (See Rathbun Co. v. Simmons, (1928) 90 Cal. App. 692, 696 [266 Pac. 369] ; H. C. Capwell Co. v. Blake, (1908) 9 Cal. App. 101 [98 Pac. 51].) Whether or not there was negligence chargeable to the defendant was a question of fact and upon that issue the trial court’s finding is conclusive upon us.
Defendant, however, upon this appeal not only challenges the sufficiency of the evidence to show negligence but also contends that each of two so-called exculpatory clauses in the lease constitutes a complete defense. Such clauses are in material parts as follows:
“Tenant agrees ... to save the Landlord harmless and indemnified from all loss, damage, liability or expense incurred or claimed by reason of Tenant’s neglect or use of the premises ... or by reason of any injury or damage to any person or property therein” and
“Tenant agrees that Tenant will not, and that agents, servants and others claiming the right under Tenants to be in the premises or in said building . . . shall not make any claim against Landlord for any injury, loss or damage to person or property occurring therein from any cause. ’ ’
We think that the first-quoted clause simply constitutes a covenant by the lessee to indemnify the landlord to the extent therein stated so far as claims by third persons are concerned and that it does not upon any reasonable construction operate to release the landlord from liability for his negligence resulting in damage to the tenant. Such clauses are strictly construed. “Stipulations of this character cannot be enlarged upon to include any damage not expressly waived, and it is generally held that such a stipulation will not excuse an injury occasioned by the negligence of the landlord in the management and use of any part of the premises remaining under his control. ’ ’ (Le Vette v. Hardman Estate, (1914) 77 Wash. 320 [137 Pac. 454, L. R. A. 1917B, 222], See, also, Hollander v. Wilson Estate Co., (1932) 214 Cal. 582, 584, 585 [7 Pac. (2d) 177].)
*Supp. 771 The last-quoted clause, however, presents a different situation. In it the tenant refers to both the premises leased and the building and agrees that he “will not . . . make any claim against Landlord for any injury, loss or damage to person or property occuring therein from any cause”. This covenant, while it does not use the words “waive” or “release” or “sue”, is, we think, similar in effect to a covenant not to sue. “A covenant not to sue a sole tort feasor is, to avoid circuity of action, considered in law a discharge, and a bar to an action against such tort feasor.” (Hawber v. Raley, (1928) 92 Cal. App. 701, 704 [268 Pac. 943].) The apparent effect of the clause under consideration is therefore to release the defendant from liability for “any injury, loss or damage to . . . property” occurring in the premises “from any cause”. The parties themselves have used the quoted language and freely and voluntarily entered into the contract. It is sufficient to bar this action unless: (1) that language be deemed not to include injury caused by defendant’s negligence, or (2) the agreement construed to waive liability for negligence be held void as contrary to public policy. We think neither proviso can be sustained.
In the ease of Cannon v. Bresch, (1932) 307 Pa. 31 [160 Atl. 595], we find a situation not dissimilar in principle from that before this court. The Supreme Court of Pennsylvania there says: “Plaintiff alleges that the damage was caused by the negligence of the defendant and that the agreement does not exempt him from liability for his acts of active negligence. The lease provides that the landlord shall be released ‘from all liability for any and all damage caused by water’. The terms are emphatic—the word ‘all’ needs no definition; it includes everything and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence. If it had been the intention of the parties to exclude negligent acts, they would have so written the agreement.”
In the state of Minnesota, in the case of Commercial Union Assur. Co. v. Foley Bros., (1918) 141 Minn. 258 [169 N. W. 793], we find the following pertinent holding relative to an even more similar factual situation: “The provisions of the lease relied upon by defendants appear in separate parts thereof and are as follows:
*Supp. 772 “(1) ‘Said L. D. Coddon Company will make no- claim against the lessor for or on account of any loss or damage sustained by water or fire howsoever coming or being within said premises. ’
“(2) ‘The lessor shall not be in any way or to any extent liable for any loss or damage to any property at any time at or within said leased premises, whether occasioned by fire or water or gas which may come or be therein or from any other cause whatsoever. ’
“It is contended by plaintiffs in support of the demurrer to the answer: (1) That the provisions of the lease quoted,' properly construed, do not include or embrace damage or loss occasioned by a fire negligently started by the lessor or its representatives; and (2) if construed to include the negligence of the lessor, that the provisions are contrary to public policy and void. Neither contention can be sustained. ’ ’ (See, also, Rodier v. Klines Inc., (1932) 226 Mo. App. 474 [47 S. W. (2d) 230]; Grady Co. v. Herrick, (1934) 288 Mass. 304 [192 N. E. 748] ; Kirshenbaum v. General Outdoor Advertising Co., (1932) 258 N. Y. 489 [180 N. E. 245, 84 A. L. R. 645] ; Weirick v. Hamm Realty Co., (1929) 179 Minn. 25 [228 N. W. 175]; Day v. Mill-Owners’ Mut. Fire Ins. Co. of Iowa, (1886) 70 Iowa, 710 [29 N. W. 443] ; Buchanan & Smock Lumber Co. v. East Jersey Coast Water Co., (1904) 71 N. J. L. 350 [59 Atl. 31].)
We are not unmindful that the Supreme Court of California in a department decision remarked by way of dictum in its opinion in the case of In re Garcelon’s Estate (1894) 104 Cal. 570, at page 589 [38 Pac. 414, 43 Am. St. Rep. 134, 32 L. R. A. 595], “A covenant made by one person not to sue another for or in respect to any matter arising out of future contracts between them, or by reason of any future tort, would, of course, be utterly void, as the parties to such contract could not have in view any particular subject-matter, or have any conception of - the amount which might be involved in the causes of action upon which the covenant was to operate,” but less than one year later the same court by a decision of its other department in the case of Stephens v. Southern Pac. Co., (1895) 109 Cal. 86 [41 Pac. 783, 50 Am. St. Rep. 17, 29 L. R. A. 751], held valid and operative a covenant in a lease exempting the lessor from liability, for future negligence. This latter decision was followed in *Supp. 773 Northwestern M. F. Ass'n v. Pacific Co., (1921) 187 Cal. 38, 44 [200 Pac. 934] ; it was distinguished factually in Hiroshima v. Bank of Italy, (1926) 78 Cal. App. 362, 377 [248 Pac. 947], upon a basis which did not weaken it as authority herein and it was cited with approval as late as 1935 in the case of Andrews v. Horton, (1935) 8 Cal. App. (2d) 40, 46 [47 Pac. (2d) 496]. We think it is the law that “A lease is a matter of private contract between the lessor and the lessee with which the general public is not concerned. And if the parties see fit to contract that the lessor shall not be liable for damages resulting from his negligence or the negligence of his employees, the law permits them to do so; and the courts must give effect to and enforce such contracts.” (Weirick v. Hamm Realty Co., (1929) 179 Minn. 25 [228 N. W. 175, 177].) It was said by the same court in Buck v. Walker, 115 Minn. 239 [132 N. W. 205, 207, Ann. Cas. 1912D, 882], and quoted in Weirick v. Hamm, supra, page 176, that “Public policy ‘requires that freedom of contract shall remain inviolate, except only in cases which contravene public right or the public welfare’.”
The Supreme Court of the United States, after discussing decisions upon contracts by which common carriers sought to exculpate themselves from negligence in respect to duties imposed by law, or where the parties had not been free to contract upon an equal footing, in distinguishing the ease then before it, said: “The principles declared in those eases are salutary, and we have no disposition to depart from them. At the same time it must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare.” (Baltimore & Ohio S. W. Ry. Co. v. Voigt, (1899) 176 U. S. 498, 505 [20 Sup. Ct. 385, 44 L. Ed. 560, 565].) Upholding the same principles the Supreme Court of California in Stephens v. Southern Pac. Co., supra, at page 89, declared: “It has been well said that public policy is an unruly horse, astride of which you are carried into unknown and uncertain paths, and here that horse would be carrying us beyond all limits ever reached before, if respondents’ position should meet with *Supp. 774 our approval. While contracts opposed to morality or law should not be allowed to show themselves in courts of justice, yet public policy requires and encourages the making of contracts by competent parties upon all valid and lawful considerations, and courts so recognizing have allowed parties the widest latitude in this regard; and, unless it is entirely plain that a contract is violative of sound public, policy, a court will never so declare.”
Concluded by the law of this state and the plain import of the parties’ contract, we are required to order that the judgment appealed from be and it is hereby reversed. The cause is remanded to the Municipal Court of the City of Los Angeles for a new trial, appellant to recover his costs of appeal.
Shaw, P. J., concurred.