[Civ. No. 9485. Third Dist. Jan. 9, 1959.]

HELEN C. MILLS, Appellant, v, GEORGE J. RUPPERT, JR., et al., Respondents.

Kasch & Cook for Appellant.

Albert L. Wagner and E. R. Vaughn for Respondents.

SCHOTTKY, J.—Helen C. Mills, lessee, commenced an action against the above-named defendants, lessors, to recover damages for defendants' alleged breach of an express covenant to keep in repair the exterior walls and roofs of the motel building. The complaint alleged that as a result of defendants' breach rain penetrated the walls causing damage consisting of: (a) the expense of making the necessary repairs to the exterior walls ($312.32) and the interior of same ($243.80); (b) damage to wall to wall carpeting and pads from the said water due to respondents' failure to make repairs; (c) damages due to diminution of reasonable rental value of the premises from the execution of the lease up to the time the repairs were made at $500 per month, and thereafter to date of trial; (d) damages to appellant's leasehold interest. The total amount of damages prayed for was $35,000.

The case was tried by the court sitting without a jury. The court awarded plaintiff the sum of $312.32 for repair of the exterior walls and $500 for decrease in the rental value for the months of December, 1955, and January, 1956, but denied any further damages. Plaintiff has appealed from said judgment.

The record shows that on July 21, 1954, Helen C. Mills entered into a written lease with Raymond Berney, Hazel Berney, George J. Ruppert, Jr. and Barbara A. Ruppert for the lease of a building known as the City Center Motel in Ukiah, California. The lease was for a term of 10 years at a total rental of $120,000 or $1,000 a month. The lease provided that "Lessee shall, at her sole cost, keep and maintain said premises and appurtenances and every part thereof (excepting exterior walls and roofs which Lessor agrees to repair), including glazing, sidewalks adjacent to said premises and the interior of the premises, in good and sanitary order, condi-

tion and repair, . . .'' The lease also provided: ''7. Lessee, as a material part of the consideration to be rendered to Lessor, hereby waives all claims against Lessor for damages to goods, wares and merchandise, in, upon or about said premises and for injuries to persons in or about said premises, from any cause arising at any time, and Lessee will hold Lessor exempt and harmless from any damage or injury to any person, or to the goods, wares and merchandise of any person, arising from the use of the premises by Lessee, or from the failure of Lessee to keep the premises in good condition and repair, as herein provided.''

During the winter of 1954-1955, the south wall of the building developed leaks. The lessors notified the contractor and he attempted to repair the wall. However, the attempt was unsuccessful. In June, 1955, Mrs. Mills notified the lessors that the wall had not been waterproofed, and the contractor applied a sealing liquid to it. In November, 1955, the wall leaked again, and again Mrs. Mills notified the lessors. She asked that the wall be repaired in a satisfactory way. Mr. Berney came to the premises with the contractor to inspect the wall, and the lessors agreed to repair it. On December 10, 1955, the contractor arrived to do the work. He obtained the keys to the rooms without Mrs. Mills' knowledge. When she discovered this, she ran up to him and an argument ensued. There is a conflict in the evidence as to whether or not the contractor struck her. In any event, Mrs. Mills ordered him off of the premises. The following Monday Mrs. Mills arranged to have the wall repaired by another person, but due to the torrential rain of the winter, the work was not completed until the end of January. During this period of heavy rainfall, the water came through the wall damaging floor coverings and staining the interior walls of certain rooms. This water damage made certain rooms too damp to rent for a period.

■ Appellant Helen C. Mills first contends that the trial court erred in not allowing her $243.80 for repairing the interior of the wall. The only question is whether or not the provision in the lease that the lessee should keep and maintain at her sole expense the premises (excepting exterior walls and roof) prevents her from recovering for the damage to the interior walls caused by the disrepair to the exterior wall. No parol evidence as to the meaning of this phrase was introduced so the interpretation becomes a question of law. We believe this provision should be construed to mean that if

damage was caused as a result of something occurring in the interior of the building, Mrs. Mills would suffer the loss; but if the damage was the result of a failure to keep the exterior wall in repair, the loss would fall on the lessors. We are fortified in this belief by the fact that the provision waiving all claims for damage to goods, wares and merchandise from any cause arising at any time specifically exempts damage to certain items. We believe a proper construction would be that by limiting the amount of damage in certain particulars, impliedly, the parties meant that in other particulars there would be no limitation. If so, the lessors would be liable for damages to the interior walls caused by failure to repair the exterior wall. The court found that the amount of damage to the interior walls was $243.80. We believe that appellant should have been awarded this amount.

 Appellant also contends that she should have been permitted to recover $883.65 which was the cost of cleaning and replacing floor coverings which had been damaged by water and dampness. The trial court denied recovery because of the clause which provided that the lessee waived all claims against the lessors for damage to goods, wares and merchandise. Such clauses have been held to be valid (*Inglis* v. *Garland*, 19 Cal.App.2d Supp. 767, 773 [64 P.2d 501]; *Werner* v. *Knoll*, 89 Cal.App.2d 474, 475 [201 P.2d 45]) except where the lessor has been guilty of what the courts call willful or active negligence. (*Butt* v. *Bertola*, 110 Cal.App.2d 128 [242 P.2d 32]; *Barkett* v. *Brucato*, 122 Cal.App.2d 264 [264 P.2d 978].) As stated in *Inglis* v. *Garland*, *supra*, at page 773: "We think it is the law that 'A lease is a matter of private contract between the lessor and the lessee with which the general public is not concerned. And if the parties see fit to contract that the lessor shall not be liable for damages resulting from his negligence or the negligence of his employees, the law permits them to do so; and the courts must give effect to and enforce such contracts.' . . ." And as stated by this court in *Werner* v. *Knoll*, *supra*, at page 475: "Clearly said section 1668 does not declare unlawful all contracts, the object of which is to exempt individuals from the consequence of their own acts, but only those contracts which would exempt one from the consequences of his own fraud, willful injury or violation of law whether willful or negligent. It is noteworthy that the only use of the word negligent in said section is in a restrictive sense and only in connection with violations of law. Therefore it necessarily follows, that

by the obvious omission from the provisions of said section 1668 of the Civil Code, contracts seeking to relieve individuals from the results of their own negligence are not invalid as against the policy of the law as therein provided, and hence are neither contrary to public policy nor expressed provision of the law as set forth in said section 1667.''

■ The court made a finding that the negligence of the lessors was passive negligence. This finding is supported since each time the lessors were notified of the leaks they made an attempt to repair the wall. ■ Appellant also contends that the rugs were not goods, wares and merchandise, and, secondly, the act of the lessors was not negligence but a breach of the covenant to repair. The lease provided that the lessee shall pay the purchase price and cost of installation of all rugs installed upon said premises and in the event the lessee abandoned the premises, or the lease was terminated because of a breach, the rugs should be deemed a part of the realty. For the purpose of this action, the rugs were not a part of the realty. It was only under certain conditions that they would become so, and the conditions never became applicable. Under such circumstances, the waiver provision should be held to be applicable and the lessors not liable for damage to the floor coverings. There is no reason why, in a case such as this, a party can not contract against liability for breach of covenant.

■ As stated in 6 Corbin on Contracts, page 870: ''. . . a landlord may contract so as to be bound to pay for repairs and yet exempt himself from liability for consequential injuries caused by his failure to perform his contractual duty''

■ Appellant contends further that the court erred in allowing only $500 for loss of rentals. Appellant submitted figures that indicated that she lost $1,140 in rentals from the period of November 25th to January 30th. These figures were based on regular rental fees and on apparently normal occupancy. There was testimony that a large part of the occupants were commercial travelers who received commercial rates and whose occupancy was usually during the week and not on week-ends. There was considerable testimony as to the loss of occupancy, and the records kept by appellant, and other evidence, were before the court. It is clear that conflicting inferences can be drawn from the evidence, and the court was not bound to accept appellant's conclusion that she lost $1,140 in rentals. We believe that the following statement in the memorandum opinion of the trial court is supported by the

record: "[T]he Court thinks that from what the records disclose the rental value of said premises was decreased at most $250.00 a month, and then only for the two months of December, 1955, and January, 1956. The Court, therefore, thinks that she has been damaged to the extent of $500.00 in this respect, and is entitled to judgment for that sum."

Appellant's final contention is that she should have been allowed damages for injury to the leasehold. However, the evidence upon this issue is conflicting, and we believe that the record fully supports the conclusion of the trial court as stated in its memorandum opinion as follows:

"The last claim of plaintiff is that she suffered $25,000.00 damages by reason of these leaky walls as a direct and proximate cause thereof, in and that the plaintiff's interest in the property as her leasehold and good will was worth $25,000.00 before the damage and was worth nothing after the damage. With this contention the Court is unimpressed. When Mrs. Mills took over this motel it was a newly constructed edifice. It was, and still is, a very attractive place; it was and is excellently situated, almost in the heart of the City of Ukiah. Mrs. Mills is undoubtedly an excellent business manager and motel operator. (The day she signed this lease must have been one of her off days.) Situated as this motel is on the main street of the City of Ukiah, to-wit, State Street, with Highway 101, the Redwood Highway, joining it on each end of the City, with a tremendous amount of traffic going through this area at all times; and under the situations above expressed the operation of the motel had to be a success, and it was a success from the very beginning, and has always been, and it still is. The record, particularly the records which she has presented here, clearly show this. The only damage the Court can see that she has sustained in this regard is the slight damage she sustained for the two months hereinabove mentioned and for which she has been given credit."

The judgment appealed from is modified and the cause is remanded to the trial court with directions to add to the judgment against respondents the sum of $243.80 for repairs to the inside of the exterior wall, making the total amount of the judgment the sum of $1,056.12; and as so modified, the judgment is affirmed. The parties to bear their own costs on appeal.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.