RYAN MERCANTILE COMPANY, a corporation, Appellant,

v.

GREAT NORTHERN RAILWAY COMPANY, a corporation, Appellee.

No. 17161.

United States Court of Appeals Ninth Circuit.

Aug. 30, 1961.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., Weymouth D. Symmes, Billings, Mont., of counsel, for appellant.

Weir, Gough .& Booth, by Edwin S. Booth, Ward A. Shanahan and Cordell Johnson, Helena, Mont., for appellee.

Before CHAMBERS and HAMLIN, Circuit Judges, and FOLEY, District Judge.

HAMLIN, Circuit Judge.

On July 22, 1954, the Great Northern Railway Company, a Minnesota corporation, leased to the Ryan Mercantile Company, a Montana corporation, certain real property located in Great Falls, Montana. The lease was to run for a term of twenty years, and the property leased is described in the written instrument as follows:

"2.   Lease:

"(A)  Premises:

"(1) Great Northern leases, lets, and demises to Ryan those certain

premises situated in Great Falls, Cascade County, Montana, located and bounded as indicated by a red line on Exhibit 'A' attached hereto and made a part hereof, together with all buildings and improvements, specifically including a building labeled machine shop, situated thereon, which for ease of reference is herein designated Ryan Tract.

"(2) Great Northern grants to Ryan for the term of this lease and any extensions thereof the right to use, in common with Great Northern, a right of way not less than twenty (20) feet wide and equivalent in use to the rights enjoyed by the public in the use of public highways, for ingress to and egress from Ryan Tract by any and all means of locomotion or conveyance along the route located and bounded by green lines on Exhibit 'A' * * *."

The lease also contains provisions requiring Ryan, under certain circumstances, to indemnify Great Northern against claims for damages and to appear and defend any suits brought against Great Northern on account of any such damage claims. These provisions read as follows:

"2. Lease:

\* \* \* \* \* \*

"(J) Damages, Claims, and Loss —Contractual Liability:

"(1) Ryan shall indemnify and save Great Northern harmless from any and all personal injuries, damages, claims, suits, costs and recoveries of every name and nature which may in any manner arise or grow out of the business conducted by Ryan on the leased premises, or the use or occupancy thereof by Ryan, or by other persons at Ryan's instance or with Ryan's consent or knowledge during the term of this lease, whether due to the negligence of Great Northern, its contractors, officers, agents, and employees; and in the event any suit or action shall be brought against Great Northern to recover on account of such loss, damage, injury, or destruction hereinbefore agreed to be borne by Ryan, Ryan shall appear and defend any such suit or action and pay any judgment that may be obtained against Great Northern.

"(2) Ryan agrees to obtain and keep in full force and effect during the life of this contract, at its own sole cost and expense, a policy of public liability and property damage insurance protecting Great Northern against loss on account of injuries to or death of persons and loss of or damage to property which may in any manner arise or grow out of the business conducted by Ryan on the above-described property or the use and occupation of said property by Ryan or by other persons at Ryan's instance or with its consent or knowledge during the term of this lease, whether or not due to the negligence of Great Northern, its contractors, officers, agents, and employees * * *."

On December 31, 1958, Evelyn Burditt, the wife of an employee of Ryan, was injured while riding in a car being driven by her husband when the car was struck by a boxcar being pushed by a switch engine owned and operated by Great Northern. The accident occurred on the right of way described in paragraph 2 (A) (2) of the agreement. Mrs. Burditt brought suit against Great Northern alleging that it was negligent in that no bells, warning lights, whistles, gongs, or other warning devices were given, all in violation of Section 72–219 of the Revised Codes of Montana,[1] and that there

1. The pertinent provisions of 72–219, R.C. M.1947, read as follows: "If any railroad corporation * * * shall permit any locomotive to approach any highway, road, or railroad crossing, without causing the whistle to be sounded at a point between fifty and eighty rods from the crossing, and the bell to be rung from said point until the crossing is reached * * * shall be deemed guilty of a misdemeanor * *." [sic].

was no watchman or flagman at the crossing to warn of the approaching switch train. Great Northern tendered the defense of the action to Ryan, but Ryan declined to accept the defense and instituted this action for a declaratory judgment to determine the rights of the parties under the lease agreement.

The trial judge ruled that "under and pursuant to the indemnity provision of said Lease, Ryan Mercantile Company * * * is obligated to defend, at its expense, the action arising out of said accident * * * and to pay any judgment entered therein and save the Great Northern Railway Company harmless in said action or alleged cause of action." [2] It is from this judgment that Ryan brings this appeal. Jurisdiction in the district court was based on diversity of citizenship, 28 U.S.C.A. § 1332, and this court has jurisdiction of the appeal under the provisions of 28 U.S.C.A. §§ 1291 and 1294.

Ryan concedes that the district judge correctly outlined the questions of law involved when he stated:

"Plaintiff contends that Mrs. Burditt's claim and suit are not covered by the indemnity agreement in that: (1) the accident occurred on the right of way described in paragraph 2(A) (2) and that the right of way is not a part of the 'leased premises' within the meaning of paragraphs J (1) and (2); (2) that it was not the intention of the parties that Ryan should indemnify Great Northern for injuries occurring on property over which Great Northern retained possession and control; (3) that it was not the intention of the parties that Ryan should indemnify Great Northern for accidents caused by the sole negligence of Great Northern employees at a place where Great Northern had the duty to provide safeguards; and (4) that the indemnity provisions are void as

against public policy and the statutes of Montana."

We shall consider these questions in the order that they are set forth above.

■ The right of way is given to Ryan in paragraph 2(A) (2) of the lease under the general heading "(A) Premises", and the use granted is described as "equivalent in use to the rights enjoyed by the public in the use of public highways, for ingress to and egress from Ryan Tract." Ryan and those having business with Ryan are permitted to use the right of way in order that Ryan may occupy and use the land and buildings described in paragraph 2(A) (1) of the lease. The right of way is a necessary and integral part of the agreement of the parties and is described in the agreement under the heading "Premises". We think that there is no merit in appellant's contention that it is not part of the "leased premises," for it appears from the instrument that the intention of the parties was to include the right of way within the term "leased premises".

■ Neither can we say that it was the intention of the parties that Ryan's indemnity agreement should not extend to claims for injuries occurring on the premises which Great Northern uses in common with Ryan. At the time the lease was entered into Great Northern must have realized that the conduct of business by Ryan would increase the risk of injury, irrespective of the cause of the injury. To us the agreement is clearly an attempt by Great Northern to insulate itself, as far as possible, from any liability occasioned by the increased risk of injury. The terms of the agreement support this theory, and an analysis of the probable business considerations gives reason to the terms as they are set forth in the document.

■ Mrs. Burditt drove to the Ryan plant to bring her husband home from his work at Ryan, and her husband was driving the car away from the Ryan

2. The quotation is taken from the Declaratory Judgment dated September 19, 1960. The opinion of the district court is reported as Ryan Mercantile Co. v. Great Northern Ry., D.C.D.Mont.1960, 186 F. Supp. 660.

plant at the time of the accident. Certainly the Burditts' use of the right of way at this time grew "out of business conducted by Ryan on the leased premises" and out of "the use and occupancy thereof by Ryan." It specifically grew out of the use "by other persons at Ryan's instance or with Ryan's consent and knowledge." The lease contains no express provisions limiting Ryan's liability to those portions of the property over which Ryan had exclusive control, and we find no implied provisions of the agreement so limiting appellant's indemnity.

■ Ryan next contends that it was not the intention of the parties that it should indemnify Great Northern for accidents caused by the sole negligence of Great Northern employees at a place where Great Northern had the duty to provide safeguards.[3] Appellee conceded in its brief that in order to uphold an indemnification agreement for damages caused by negligent acts of the indemnitee there must be clear and unequivocal terms, but contends that in this case the terms of the indemnity agreement are clear and unequivocal. We agree. An examination of the indemnity agreement discloses no ambiguity. The phrases used—"any and all personal injuries", "of every name and nature which may in any manner arise", "whether due or not due to the negligence of Great Northern"

—demonstrate that Ryan's indemnity would cover any claim made against Great Northern for damages, no matter where on the premises mentioned in the lease such claim arose, and shows that the parties had in mind that the negligence of Great Northern would be no bar to Ryan's indemnity obligation. In addition, paragraph 2(J) (2) of the lease requires Ryan to keep in force public liability and property damage insurance protecting Great Northern against loss by the happening of any of the contingencies mentioned in paragraph 2(J) (1).

This court had occasion to consider the terms of an indemnity agreement in Bedal v. Hallack & Howard Lumber Co., 9 Cir., 1955, 226 F.2d 526,[4] where it held that the provisions of the indemnity agreement were sufficient to provide a recovery by the indemnitee (Railroad) against the indemnitor (Lumber Company) in a case where it had been determined that the railroad indemnitee was negligent and liable in damages to a third person. This court in speaking of the indemnity agreement in that case said, "It would be hard to find more all-inclusive language."[5] We believe that the language in the agreement now before this court is even more specific and that there can be no question but that it is designed to impose liability upon Ryan.

3. Mrs. Burditt's complaint alleged, inter alia, that at the time and place of the accident "no guards nor gates were kept or maintained at said crossing by defendant; that at said time and place there were no bells, warning lights, whistles, gongs, or other warning devices kept or maintained at said crossing by said defendant * * * that there were no bells, warning lights, whistles, gongs, or other warning devices given to said plaintiff warning her of the approach of said train or switch engine and said cars, all of which is in violation of Section 72-219, Revised Codes of Montana, 1947; * * * [t]hat because of the fact that no notice of the condition of said crossing as herein alleged and of its being more than ordinary dangerous to persons crossing the same, as such persons had a legal right to do, was given to such persons; * * * that de-

fendant * * * its agents, servants and employees knew or in the exercise of ordinary care and prudence should have known of such dangerous condition."

4. The indemnity agreement in Bedal contained the following language: "It is especially covenanted and agreed * * * that the Lessee shall hold harmless the Lessor and the leased premises from any and all liens, fines, damages, penalties, forfeitures or judgments in any manner accruing by reason of the use or occupation of said premises by the Lessee; and that the Lessee shall at all times protect the Lessor and the leased premises from all injury, damage or loss by reason of the occupation of the leased premises by the Lessee, or from any cause whatsoever growing out of said Lessee's use thereof."

5. 226 F.2d at page 540.

Appellant's final contention is that the indemnity clauses of the lease are void as against public policy. The complaint in Mrs. Burditt's negligence action against Great Northern alleged that at the time of the accident Great Northern did not blow a whistle or ring a bell as required by Section 72–219, R.C.M.1947.[6] Section 13–802, R.C.M. 1947, reads as follows:

"All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or for wilful injury to the personal property of another, or violation of law, whether wilful or negligent, are against the policy of the law."

There are no Montana cases in point construing the section quoted above. However, it is identical with Section 1668 of the Civil Code of California, and there have been some California cases discussing this section. Appellee relies on the construction found in Werner v. Knoll, 1945, 89 Cal.App.2d 474, 201 P.2d 45, while the appellant contends that the holding in Werner v. Knoll has in effect been overruled by Barkett v. Brucato, 1953, 122 Cal.App.2d 264, 264 P.2d 978, and Butt v. Bertola, 1952, 110 Cal.App.2d 128, 242 P.2d 32.

In Werner v. Knoll the action was brought to recover damages for the wrongful death of the plaintiff's son who sustained fatal injuries while operating a tractor owned by the defendant upon farm land leased by the plaintiff from the defendant. The lease contained the following provision [89 Cal.App.2d 474, 201 P.2d 46]:

"First party [defendant] shall not be liable for any damage arising from personal injuries sustained by any person or persons, in, on or about said premises, from any cause whatsoever, and second party [plaintiff] agrees to save and keep first party free and harmless of and from any such liability, loss or damage."

The court there held that under Section 1668 the lease provision was not against public policy, saying:

"In the case of Inglis v. Garland, 19 Cal.App.Supp.2d 767, 64 P.2d 501, 502, a clause by which a lessee agreed to make no ' * * * claim against Landlord for any injury, loss or damage to person or property occurring therein for any cause' was held by the court to be a covenant not to sue and a bar to the maintenance of an action by the plaintiff['s] lessee. Additionally the court held that a lease is a private contract between the parties thereto with which the general public is not concerned and therefore the provision there in question was not void as against public policy. In so holding the court was but following the general rule (see Rest.Contr. sec. 574) as applied in this state in the earlier case of Stephens v. Southern Pac. Co., 109 Cal. 86, 41 P. 783, 29 L.R.A. 751, 50 Am.St.Rep. 17, which frequently has been cited with approval in like cases." [7]

In Butt v. Bertola the court was dealing with a general exemption clause which read as follows [110 Cal.App.2d 128, 242 P.2d 39]:

"It is agreed by the parties hereto, that said Lessor shall not be liable for damages to any goods, property, or effects in or upon said demised premises, caused by gas, water, or other fluid from any source whatsoever."

The court held that the clause did not relieve the lessor from liability under the circumstances present in the case, but in doing so it emphasized the gravity of the misconduct:

"This misconduct was, at the very least, active or affirmative negligence, not mere ordinary negligence. It comes very close to being wilful misconduct, for exemption from the consequences of which a person may

---

6. See footnote 1.

7. 201 P.2d at page 47.

not contract. Civ.Code, § 1668 * * * * Defendants have cited a number of decisions on exculpatory clauses which seemingly arrive at a different result. We are not persuaded. Each contract must be viewed in its own setting, and applied to the particular set of facts presented to a court for consideration."[8]

The court referred to Werner v. Knoll, but felt that it did not control the clause under consideration in Butt:

"[T]he trend of decisions is to exclude from such general clauses the exemption of a landlord from the consequences of his own affirmative negligence; i. e., a species of exemption not intended by the parties unless clearly and in more specific terms expressed."[9]

In Barkett v. Brucato the court approved the statements contained in Butt v. Bertola, stating that a general waiver clause "will not be interpreted, in the absence of clear, positive and specific language, to include acts amounting to affirmative negligence."[10] In his opinion in the case now before us the district judge pointed out that "[i]t should be noted, however, that in both of these California cases the court was construing a general exemption clause, and not one which expressly made the indemnitor liable for the indemnitee's negligence."[11] The contract between Ryan and Great Northern expressly provided for indemnity whether or not the damage was due to the negligence of Great Northern. We agree with the statement of the district judge that "the California cases upon which the plaintiff relies are not applicable in view of the express provision for indemnity 'whether due or not due to the negligence of Great Northern' ".[12]

The case of Pettit Grain & Potato Co. v. Northern Pacific Ry., 1948, 227 Minn. 225, 35 N.W.2d 127, is persuasive. In that case the lessee had agreed to indemnify the railroad for any loss, occasioned by fire or sparks, incident to the operation of the railroad's trains, whether or not such loss was the result of the negligence of the railroad's employees. The contention was made that this provision was invalid because the law required the railroad companies to equip locomotives with spark arresters and provided that a violation of such law would be a misdemeanor. The court held that the provision was not invalid, stating:

" 'Neither law nor public policy prevents the ordinary contractor from buying from a third party indemnity from the pecuniary result of his own negligence. That is legitimate as insurance. How does the same process, with identical result, become illicit simply because they are those of the original and basic contract rather than a collateral one for conventional insurance?'

"It was, therefore, permissible as a matter of public policy for a railroad company and the lessee of part of its right of way to stipulate in the lease for the former's exemption from liability for loss caused by fire set by its locomotives, even though such fire might be the consequence of acts of the railroad company's servants made criminal by statute. Such a lease provision does not stipulate for the commission of any criminal act or involve participation in one, nor does it tend to encourage such conduct. It does not provide for indemnity against punishment for the crimes of the company's servants or for the heavy penalty to which a company is subject for violation of the statutes. Likewise, it has no tendency to lessen the company's performance of its duties as a common carrier * * *."[13]

The agreement between the parties now before this court merely provides

8. 242 P.2d at page 39.

9. Id., at page 40.

10. 264 P.2d at page 988.

11. 186 F.Supp. at page 667.

12. Ibid.

13. 35 N.W.2d at page 133.

that Ryan will hold Great Northern harmless from any judgment, and that to aid in carrying out this purpose Ryan will carry liability insurance. We see nothing in this arrangement that is contrary to public policy. The agreement does not provide that Ryan shall pay the fine if Great Northern is convicted of a criminal violation, nor does it prevent the railroad from being primarily liable to Mrs. Burditt if in fact her injury was the result of the negligence of the railroad's employees. It is simply a private contract of insurance.

The judgment of the district court is affirmed.

FOLEY, District Judge (dissenting).

Mrs. Burditt's claim and suit are not covered by the indemnity agreement for at least two reasons: (1) The place of the accident on the described right of way was not a part of the leased premises; (2) the accident and the injuries resulting therefrom did not in any manner arise or grow out of the business conducted by Ryan on the leased premises, or the use or occupancy thereof by Ryan, or by other persons at Ryan's instance or with Ryan's consent or knowledge.

The indemnity clause with which we are here concerned is as follows:

"Ryan shall indemnify and save Great Northern harmless from any and all personal injuries, damages, claims, suits, costs, and recoveries of every name and nature which may in any manner arise or grow out of the business conducted by Ryan on the leased premises, or the use or occupancy thereof by Ryan, or by other persons at Ryan's instance or with Ryan's consent or knowledge during the term of this lease, whether due or not due to the negligence of Great Northern, its contractors, officers, agents, and employees; and in the event any suit or action shall be brought against Great Northern to recover on account of such loss, damage, injury, or destruction hereinbefore agreed to be borne by Ryan, Ryan shall appear and defend any such suit or action and pay any judgment that may be obtained against Great Northern."

Both the lower Court and the majority of this Court rely as a basic reason for their conclusions that the right of way granted by Great Northern to Ryan is a part of the leased premises on the fact that the right of way was described in the lease under the heading "Premises"

Judge Jameson, in his opinion, R. 61, 62, 186 F.Supp. 660, 663, on this subject, stated:

"[1] Is the right of way a part of the 'leased premises'? This question must be answered in the affirmative. The section of the instrument denominated '2. Lease' has sixteen subsection, from A to P inclusive. Subsection A is entitled 'Premises'. This in turn has three subparagraphs, the first leasing an area bounded in red on an exhibit attached to the lease, 'together with all buildings and improvements', and the second granting a right of way for use 'in common with Great Northern' for 'ingress and egress' along a route bounded in green, and providing that Great Northern should have the right to substitute other land for the right of way and should maintain the right of way at its own expense.

"The right of way is included under A as a part of the 'premises'. There is no contention that the right of way is a public highway. Ryan, and those doing business with Ryan, are entitled to use the right of way in common with Great Northern solely by reason of the grant contained in paragraph 2(A) (2). This grant of an easement was an integral and necessary part of the lease agreement if Ryan were to enjoy the use and occupancy of the land and improvements described in paragraph 2(A) (1). Moreover, unless the parties intended the right of way to be a part of the leased premises, there would be no reason for includ-

ing the portion of the agreement granting the right of way under the heading 'A Premises.'"

The majority say:

"The right of way is given to Ryan in paragraph 2(A) (2) of the lease under the general heading '(A) Premises', and the use granted is described as 'equivalent in use to the rights enjoyed by the public in the use of public highways, for ingress to and egress from Ryan Tract.' Ryan and those having business with Ryan are permitted to use the right of way in order that Ryan may occupy and use the land and buildings described in paragraph 2(A) (1) of the lease. The right of way is a necessary and integral part of the agreement of the parties and is described in the agreement under the heading 'Premises'. We think  *  * there is no merit in appellant's contention that it is not part of the 'leased premises,' for it appears from the instrument that the intention of the parties was to include the right of way within the term 'leased premises.'"

The reliance upon the circumstances that the right of way is described under the title "Premises" disregards or minimizes other equally important provisions of the lease. Note the language of Paragraph 2(A) (1) of the lease:

"Great Northern leases, lets, and demises to Ryan those certain premises situated in  *  *  *, located and bounded as indicated by a red line on Exhibit 'A' attached hereto and made a part hereof, together with all buildings and improvements, specifically including a building labeled machine shop, situated thereon, which for ease of reference is herein designated *Ryan Tract*." (Emphasis supplied.)

And consider and compare the same with the language of Paragraphs 2(A) (2) and 2(A) (3), both likewise under the heading "Premises".

Paragraph 2(A) (2) provides:

"Great Northern grants to Ryan for the term of this lease and any extensions thereof the right to use, in common with Great Northern, a right of way not less than twenty (20) feet wide and equivalent in use to the rights enjoyed by the public in the use of public highways, for ingress to and egress from Ryan Tract by any and all means of locomotion or conveyance along the route located and bounded by green lines on Exhibit 'A'; provided, however, that during the term hereof Great Northern may substitute for such right of way any other right of way of equal width, with comparable surface conditions and equal scope and convenience of use. Great Northern shall maintain the right of way according to the present standard of maintenance at its sole cost and expense."

The land leased was designated as *Ryan Tract*. The right of way, indicated by green lines on Exhibit A, was not part of the Ryan Tract.

Paragraph 2(A) (3) provides:

"Great Northern grants to Ryan, during the term of this lease and any extensions thereof, an irrevocable license and permission to use the adjoining premises of the Great Northern as required to maintain and repair the building, the use to be made of said adjoining premises by Ryan to be subject to the approval of Great Northern's superintendent in respect to ensuring the safety and continuity of railroad operations."

A contention that the land, the adjoining premises of Great Northern, the subject matter of "an irrevocable license and permission to use," described in Paragraph 2(A) (3), is a part of the leased premises because of the fact that 2(A) (3) is set forth in the lease under the heading "Premises" would obviously be without merit. If the said land mentioned in 2(A) (3) is not a part of the

leased premises, a contention that the right of way is a part of the leased premises because of the mere fact that it is described under the heading "Premises" would be unreasonable and inconsistent.

It seems apparent that the right of way was not intended to be anything except just that—a right of way. The instrument or lease does not afford to Ryan any use of the right of way other than the right of ingress and egress and the grant of right of way was not exclusive but was in common with Great Northern. But the use and possession of the land leased was exclusive to Ryan as indicated by Paragraph 2(P):

"(P) Possession:

"Sole and exclusive possession of the leased premises shall be delivered to Ryan upon the execution of this instrument, and Great Northern shall at all times during the term hereof protect and assure the exclusive possession of said premises by Ryan."

Sole and exclusive possession of the right of way was not granted to Ryan. No expression is contained in the lease to the effect that the right of way is a part of the leased premises. The unsupported inference that the right of way was included in the "leased premises" disappears when considered with the above referred to and other provisions of the lease.

The term "right of way" is defined as meaning a right of passage over another person's land, and it has been said that this definition has been so universally incorporated into innumerable decisions that it may be said to be generally accepted. 77 C.J.S. 393; and see Almada v. Superior Court, Cal.App., 149 P.2d 61, 64, where it is stated:

"Webster's New International Dictionary defines a right of way as 'a right of passage over another person's land.' And this definition has been so universally incorporated into innumerable decisions that it may be said to be generally accepted. Sometimes it is a right of way for a

road, sometimes for a ditch, sometimes for a canal, but whatever the particular right of way may be for, it is a right of passage over another person's land, or, in other words, an easement to use the land of another for such particular purpose."

The fact that the easement was necessary to the enjoyment by Ryan of the use and occupancy of the land leased seems to be considered by the lower Court and the majority here as a circumstance or reason for their determination that the right of way was a part of the leased premises. That fact does not make the right of way a part of the leased premises. If that were so, then in every instance where a right of way is granted giving ingress and egress to leased premises, the right of way would be a part of the leased premises.

That it was not the intention of Great Northern or the understanding of Ryan that the right of way was to be included as part of the leased premises is indicated by Paragraph No. 1, "Recitals of Fact" of the lease:

"1. Recitals of Fact:

"(A) Great Northern owns a building situated upon land owned by it * * *. The building, a former machine shop, is no longer desired for use by Great Northern but after extensive remodeling can be adapted to other business purposes. Ryan is currently engaged in the wholesale distribution of food products and, under its articles of incorporation and bylaws, is at liberty to engage in many broad business pursuits and accordingly believes that after remodeling to suit its purposes, it can utilize said building. Ryan desires, therefore, to lease that land owned by Great Northern and outlined in red upon Exhibit 'A,' attached hereto and made a part hereof, and the machine shop situated thereon, * * *."

From the foregoing it is apparent that the place of the accident on the described right of way was not a part of the leased premises.

The second reason why the indemnity clause does not apply here: The accident and the injuries resulting therefrom did not in any manner arise or grow out of the business conducted by Ryan on the leased premises, or the use or occupancy thereof by Ryan, or by other persons at Ryan's instance or with Ryan's consent or knowledge.

Judge Parker, in his dissenting opinion, in Cacey v. Virginian Ry. Co., 4 Cir., 85 F.2d 976, in considering an indemnity clause "against claims arising 'by reason [of] or in consequence of the occupancy or use' of the premises leased," construed language similar in effect to that used in this lease. There he stated, on page 979:

"Sometime after the defendants had purchased the property in the neighborhood of the steps, they were approached by an agent of the railway company and told that, if the steps were to remain, it would be necessary for the defendants to secure an encroachment lease for the property affected, just as they had done with respect to a water pipe which they had laid under the railway company's tracks. Nothing was said as to indemnifying the company against liability for crossing accidents due to the negligent operation of its trains; and the lease as executed contains no express provision to that effect, but merely a general provision to indemnify against claims arising 'by reason or in consequence of the occupancy or use' of the premises leased. The lease, which was an ordinary form of encroachment lease, embraced merely the land covered by the steps; the description of the premises leased being as follows, viz.: * * *

"Paragraph 1 of the covenants contained in the lease is that the land leased is to be used as a 'location for steps.' Paragraph 6, which is the one here material, is as follows: 'The party of the second part agrees to indemnify The Virginian Railway Company and save it harmless from any and all claims and costs that may arise or be made, for injury, death, loss or damage resulting to the Railway Company's employees or property, or to other persons or their property, including the lessee, or the occupants of said premises, by reason or in consequence of the occupancy or the use of the said premises, or the use of the property of the Railway Company adjacent thereto.' * * *

"Okley Stike was injured while crossing the railway tracks at this crossing, as a result of the negligence of the railway company in the operation of one of its trains, and recovered a verdict and judgment in the sum of $10,000 on account of this negligence; but the claim upon which the verdict and judgment were obtained was clearly not one arising 'by reason or in consequence of the occupancy or the use' of the steps, or of the crossing to which they led, but one arising 'by reason and in consequence of' the negligence of the railway company in the operation of its train. Where one properly using a crossing is injured as a result of such negligence, it is not the use of the crossing but the negligence which causes the injury; and the claim thereupon arising cannot properly be said to arise 'by reason or in consequence' of the use of the crossing, for these terms import a causal relationship. The use of the crossing no more establishes such causal relationship, even though the injury would not have occurred but for such use, than the use of a street could be said to be the cause of an injury caused by a falling sign, merely because the person injured would not have been struck by the sign if he had not been using the street. The distinction between the cause of an injury and a mere condition without which it would not have occurred is well recognized in the law. For the distinction between the two, see 11 C.J. 37, note b; [and cases cited in the opinion]. And a

contract indemnifying against claims arising by reason or in consequence of the use of property ought not to be construed to cover a case where the use of the property was not the cause of the arising of the claim but merely furnished a situation in which the negligence of another gave rise to the claim. If it had been intended to indemnify against liability for claims arising out of injuries occurring at the crossing, there would have been no trouble in so providing by appropriate language."

Applying the rule of law enunciated by Judge Parker to the admitted facts of this case, it is evident that the accident and resulting injuries to Mrs. Burditt did not in any manner arise or grow out of the business conducted by Ryan on the leased premises, or arise or grow out of the use or occupancy thereof by Ryan, or by other persons at Ryan's instance or with Ryan's consent or knowledge during the term of this lease, whether due to the negligence of Great Northern, its contractors, officers, agents and employees.

The judgment of the lower Court is erroneous for the reason that the accident did not occur on the leased premises and also for the reason that the accident and the injuries resulting therefrom did not in any manner arise or grow out of the Ryan business.

The District Court does not assume nor could it be successfully contended that the indemnity provision here under consideration would apply to an accident occurring on the right of way and caused by the negligence of Great Northern in its movement of a train or car operated solely in the interest of its business as a common carrier, or otherwise, and not in any manner engaged in or connected with Ryan's business. The instrument itself indicates that such was not the intent of the parties.

Great Northern retained and enjoyed the right to use the right of way in pursuance of its own business as a common carrier, or otherwise, to the exclusion of Ryan's business. There is nothing in this record to show that Great Northern's train or car was being operated in furtherance of the business carried on by Ryan or whether it was, at the time of the accident, engaged in its own business or in the business of others.

The indemnity clause contains no language imposing liability upon Ryan for negligent acts of Great Northern over which it had no control in an operation of Great Northern's business as a common carrier, or otherwise, exclusive of any connection with Ryan or Ryan's business. Such a liability cannot be read into the contract. The liability of the indemnitor Ryan cannot be extended by construction or implication beyond the terms of the contract. And furthermore, if such an intention had been expressed, grave doubts would exist as to its legality.

In his opinion, R. 68, 186 F.Supp. 660, 665, the District Judge said:

"The rule here applicable was well stated in 6 Corbin on Contracts 864, § 1471 as follows: 'A railroad or other carrier may lawfully contract with one permitted to use a spur track or to occupy part of the right of way that the latter shall not only exempt the former from liability for negligent harm but also that the latter shall indemnify the former against liability for harm to third persons arising out of such use, even though the harm was caused by negligence of servants of the former. *This Assumes That The Promisee's Negligence Was Not In Performance Of Its Duties As A Common Carrier.*'" (Emphasis supplied.)

Corbin cites Cacey v. Virginian Ry. Co., 4 Cir., 85 F.2d 976, 978. The majority there stated:

"[2] It has been repeatedly held that a railway company not acting as a common carrier may exempt itself, by contract, from liability for negligence. National Transit Co. v. Davis, Director General of Railroads (C.C.A.) 6 F.(2d) 729; Sunlight

Carbon Co. v. St. Louis & S. F. R. Co. (C.C.A.) 15 F.(2d) 802; Hartford Fire Insurance Co. v. Chicago, M. & St. P. R. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84; Santa Fe, P. & P. R. Co. v. Grant Brothers Construction Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787."

A correct adjudication of this case requires a determination of the issue: Was Great Northern, in the operation of its equipment at the time of the accident, engaged as a common carrier, or otherwise, in its own business to the exclusion of any connection with Ryan's business? An affirmative answer to this question would entitle plaintiff to judgment in its favor. Thus, we have a genuine issue as to a material fact, the existence of which precludes the entry of summary judgment.

The judgment of the lower Court should be reversed.